**Davis Miles McGuire Gardner**

40 E. Rio Salado Pkwy., Suite 425
Tempe, AZ 85281
Telephone: (480) 733-6800
Fax: (480) 733-3748
efile.dockets@davismiles.com

Pernell W. McGuire – SBN 015909
Aubrey Thomas – SBN 029446
Preston Gardner – SBN
*Attorneys for Debtors*

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| In re:<br><br>EVEN STEVENS SANDWICHES, LLC, *et al.*<br><br>                          Debtors.<br><br>This filing applies to:<br>☐ All Debtors<br>☒ Specified Debtors<br>Even Stevens Sandwiches, LLC; Even Stevens Utah, LLC, and Even Stevens Idaho, LLC | Case No.: 2:19-bk-03235-DPC<br><br>Chapter 11<br><br>(Jointly Administered)<br><br>**JOINT CHAPTER 11 PLAN OF EVEN STEVENS SANDWICHES, LLC, EVEN STEVENS UTAH, LLC AND EVEN STEVENS IDAHO, LLC** |

I. <u>INTRODUCTION</u>

The Plan of Reorganization envisioned by Debtors contemplates a recapitalization of the Debtors and the use of the proceeds from such capitalization is an ongoing operating plan that will result in payment in full of all administrative, priority and secured claims and a distribution to the general unsecured creditors sufficient to meet the best interest of creditors

test. The Plan further contemplates that current unit holders in the Debtors Even Stevens Sandwiches will retain a ten percent (10%) interest. For purposes of this Plan, the claims of creditors have been computed as would have been allowed by a Chapter 7 trustee (*i.e.*, priorities have been maintained in the classification of creditors).

II. <u>IMPLEMENTATION OF THE PLAN</u>

Debtor Even Stevens Sandwiches, LLC ("ESS") shall convey an equity interest to Take 2, LLC ("Take 2") in exchange for a minimum aggregate consideration of five million dollars ($5,000,000). Prior to the closing, ESS shall be converted to a sub-chapter C corporation. Take 2 shall pay the sum of two million dollars ($2,000,000) upon closing (less a credit for any amounts loaned by Take 2 to the Debtors in connection with any Debtors in Possession financing) and ESS shall convey to Take 2 shares equal to forty-five percent (45%) of the total shares outstanding. Take 2 shall make twenty-four (24) regular fixed payments on the last day of each calendar quarter following the closing in the amount of one hundred and twenty-five thousand dollars ($125,000.00) for a total of three million dollars ($3,000,000). Upon Take 2's payment of a total of two million five hundred thousand dollars ($2,500,000), Take 2 shall be issued Shares equal to 90% of the total shares outstanding.

In addition to the minimum aggregate consideration, annually, beginning on March 15, 2021 and continuing through March 15, 2026, Take 2 shall make an additional payment to the general unsecured creditors equal to fifty percent (50%) of the realized prior fiscal year's tax savings attributed to the application of the 2019 net operating loss. Finally, general unsecured

2

creditors will be entitled to dividends from the Reorganized Debtors until Take 2 has paid all twenty-four (24) payments of $125,000 each.

## II. CLASSIFICATION AND TREATMENT OF CLAIMS

A.  <u>Allowance of Claims</u>. A claim will receive a distribution under the Plan only if it is an "Allowed Claim." Except as expressly stated in the Plan, or as allowed by the Court, no interest, penalty, late charge or additional charges such as attorneys' fees, shall be added to any claim after it has been allowed.

Creditors whose claims were not scheduled by Debtors or were scheduled as contingent, unliquidated, or disputed are required to file a proof of claim in order to participate in the reorganization, and such proofs of claim must be filed prior to the separate bar date has been set by the Court, or unless the claim arises out of the operation of the Plan, such as rejection of executory contracts and leases, or deficiency claims arising out of the abandonment of collateral to previously secured creditors. Proofs of claims are deemed allowed unless objected to by Debtors or other party in interest, and if an objection is filed, the Bankruptcy Court must determine whether the claim should be allowed.

B.  <u>Classification of Claims</u>. The Plan allows the following classes of claims:

<u>Class 1: Administrative Claims</u>.  Class 1 claims will consist of all claims which are allowed claims pursuant to Bankruptcy Code §§ 503(b) and 507(a)(1), including, without limitation, the Allowed Claims of Debtors' professionals, any other professionals approved by the Court, including counsel for the Unsecured Creditor's Committee and any quarterly fees

3

payable to the United States Trustee, and other claims of creditors holding Administrative Claims, including taxes.

<u>Class 2: Secured Claim</u>. Class 2 consists of the Allowed Secured Claim of Standard Industries, Inc., secured by an interest in Debtors' equipment described in their security agreement (restaurant and other equipment).

<u>Class 2A Secured Claim.</u> Class 2A consists of the Allowed Secured Claim of the Internal Revenue Service, secured by an interest in Debtors Even Steven Utah LLC's assets.

<u>Class 2B Secured Claim.</u> Class 2B consists of the Allowed Secured Claim of Cache County Treasurer, secured by an interest in Debtors Even Steven Utah LLC's assets.

<u>Class 3 Priority Claims</u>. Class 3 consists of all Allowed Priority Claims and includes the priority unsecured claims of the Internal Revenue Service, Utah State Tax Commission, Idaho State Tax Commission, and Weber County Assessor.

<u>Class 4 General Unsecured Claims</u>. Class 4 consists of all Allowed General Unsecured Claims.

<u>Class 5 – Member Equity Interests</u>. Class 5 consists of the interests of all members of Debtors Even Stevens Sandwiches, LLC.

C. <u>Treatment of Class 1</u>

This Class consists of allowed Administrative Claims under §§ 503(b) and 507(a)(2) related to the Debtors. The Allowed Claims of Class 1 shall be paid in full, in cash, by the

4

Case 2:19-bk-03236-DPC    Doc 200    Filed 10/17/19    Entered 10/17/19 13:33:23    Desc
Main Document    Page 4 of 16

earlier of the Effective Date or the date that such are allowed and ordered paid by the Court. Pending Court approval, Debtors shall set aside enough funds to pay all administrative claims until Court approval is obtained.

Currently, Debtors owe approximately $161,300.22 to the law firm of Davis Miles McGuire Gardner, PLLC (the "Firm"). The Firm is holding $73,312.96 in its trust account on behalf of Debtors, pending Court approval of the Firm's fees. Debtors anticipate incurring another $25,000.00 in attorneys' fees through plan confirmation. The Debtors have been informed that counsel for the Unsecured Creditor's Committee has incurred fees of approximately $40,000 thus far.

All post-confirmation fees incurred in prosecuting avoidance actions, claims objections or other matters in connection with the administration of the Plan shall be paid from the proceeds of the transaction with Take 2, LLC.

D. <u>Treatment of Class 2</u>

Debtors propose to pay the Class 2 claim holder, Standard Industries, Inc., the full amount of its Allowed Secured Claim upon closing of the transaction with Take 2, LLC. In the event the Debtors object to the claim of Standard Industries, Inc., and such objection has not been ruled upon prior to the closing, the Debtors shall place in a segregated account the sum of $103,031.71, the amount of its asserted claim against Even Stevens Utah, LLC pending resolution of the claim objection.

E. <u>Treatment of Class 2A</u>. Debtors propose to pay the Class 2A claim holder, Internal Revenue Service, the full amount of its Allowed Secured Claim upon closing of the transaction with Take 2, LLC.

F. <u>Treatment of Class 2B</u>. Debtors propose to pay the Class 2A claim holder, Cache County, the full amount of its Allowed Secured Claim upon closing of the transaction with Take 2, LLC.

G. <u>Treatment of Class 3</u> Debtors propose to pay the Allowed Priority Unsecured Claims in full, without interest, after payment of the Class 1, Class 2, 2A and 2B claims within fourteen (14) days of receipt of funds from Take 2, LLC. In the event the funds received from Take 2, LLC are insufficient to pay all Class 3 claimants in full, Debtors shall make a pro-rata payment to the Class 3 claimants from such funds as and when received and shall continue to make payment on a quarterly basis until the Class 3 claims are paid in full.

H. <u>Treatment of Class 4</u>. After payment of all Class 1, 2, 2A, 2B and 3 claim holders, Class 4 creditors shall be paid a *pro rata* share of the proceeds from the Take 2, LLC transaction as follows:

1. An initial payment upon closing equal to $2,000,000 minus repayment of all administrative (including any balance owed on outstanding Debtors-in-Possession financing), Allowed Priority and Allowed Secured Claims.

2. Quarterly payments of $125,000 for 24 continuous quarters.

3. Fifty percent (50%) of the actual tax savings realized during the first six fiscal years directly attributable to the Company's 2019 Net Operating Cary-Forward Loss. The Carry-forward loss shall be applied to any GAAP standard taxable income per IRS statutes. All tax returns shall be completed by Company's CPA following an annual audit.

4. Dividends earned by owners of the Company's new Series A common stock until all amounts due from Take 2 LLC have been paid.

I. <u>Treatment of Class 5</u> Debtors propose to restructure the ownership interest of the Debtors as follows:

Upon Plan Confirmation:

1. Debtors Even Stevens Sandwiches, LLC shall be converted to a "C" Corporation.

2. Existing ownership shall be issued 55% ownership in Series A common stock in an equivalent percentage basis to current Membership Units. Series A common stock shall have 1 vote per share.

3. New ownership shall be issued 45% ownership in Series B common stock. Series B common stock shall have 10 votes per share.

4. All dividends earned by owners of Series A common stock during this period (payment up to $2,500,000) shall inure to the benefit of the Unsecured Creditors.

7

Upon Total Payment of $2,500,000

1. New ownership shall be issued additional Series B common stock to bring their percentage of ownership to 90%.
2. All dividends earned by owners of Series A common stock during this period (payment up to $5, 000,000) shall inure to the benefit of the Unsecured Creditors.

Upon Total Payment of $5, 000,000:

Upon total payment of $5, 000,000, all dividends earned by owners of Series A common stock shall inure to the benefit of each individual shareholder.

J.    The holder of any claim to which an objection has been made prior to or on the date on which the first payment to the holder of such a claim is made, shall not be entitled to receive any distribution otherwise attributable to that claim until the objection has been resolved by court order. Any distribution which would otherwise accrue to the benefit of the holder of an Allowed Claim prior to resolution of an objection shall be held by Debtors in a segregated account and upon resolution of the objection either paid to the claim holder or returned to the estate, as appropriate, in light of the Court's resolution of the objection. In the event a claim is reduced voluntarily by the claimholder or by ruling of the Court following objection by Debtors or any other party-in-interest, Debtors may, at its option, continue to make payments in the monthly amount specified in the Plan of Reorganization until the reduced claimholder has received all amounts to which it is

8

entitled, or alternatively, reduce the monthly amount payable on behalf of the reduced claim (and all claims of the same class) so that the claims are paid within the time specified in the Disclosure Statement and Plan of Reorganization. This option to decrease the monthly payment but pay for the full term specified in the Plan or maintain the monthly payment and reduce the term over which such payments must be paid, shall be within the sole discretion of Debtors and the exercise of its reasonable business judgment.

K. All undisputed taxes generated by any step of the operation of this Plan, or accruing during the operation of this Plan, will be considered administrative expenses to be satisfied as they accrue.

**L. DEBTORS BELIEVE THAT THE PLAN DESCRIBED HEREIN PROVIDES THE GREATEST AND EARLIEST POSSIBLE RECOVERIES TO CREDITORS. THUS, DEBTORS BELIEVES THAT ACCEPTANCE OF THE PLAN IS IN THE BEST INTEREST OF EACH AND EVERY CLASS OF CREDITOR, AND RECOMMENDS THAT EACH CLASS VOTE TO ACCEPT THE PLAN.**

III. DISTRIBUTIONS

A. <u>Initial Distribution.</u> The accrued costs of administration will be deemed approved as of the later of (i) the Effective Date, or (ii) the date the Court allows such claims, if allowance is required as a condition of payment. Payment will be made as soon as practicable after approval but not later than described above.

B. <u>Interim Distributions.</u> Debtors shall calculate the distributions due Allowed Claims monthly, taking into account the resolution of any disputed claims, and shall make the payments required by the Plan.

C. <u>Unclaimed Distributions.</u> Any distributions under the Plan that are unclaimed for six months will be returned to the Reorganized Debtors.

D. <u>Estimates.</u> The distributions set forth in this Plan are estimates based on the figures set forth in the Disclosure Statement. The amount of actual distributions may differ from the estimates by reason of, *inter alia*, additional services for which administrative payments become due, variations in cash flow from operation of Debtors' business, variations in the amount of Allowed Claims, the existence of disputed claims, or the resolution of such disputes, elections by holders of general unsecured claims to reduce the amount of their claims, and possible deductions and expenses from liquidated property, if any.

IV. <u>EFFECT OF PLAN</u>

A. <u>Vesting of Property.</u> Confirmation of this Plan will vest all of the property of the estate in the Debtors. To the extent required by Section 1124(2) of the Bankruptcy Code, to preserve the rights of a creditor holding a security interest in property of the estate, the lien or encumbrance of that creditor shall, to the extent valid, be preserved.

B. <u>Discharge.</u> Except as otherwise provided for by the Plan, confirmation of the Plan discharges the Debtors from any debt that arose before the date of such confirmation and any debt of a kind specified in section 502(g), 502(h) or 502(i) of the Bankruptcy Code,

10

whether or not (i) a proof of claim is filed or deemed filed under section 501 of the Bankruptcy Code; (ii) such claim is allowed under section 502 of the Bankruptcy Code; or (iii) the holder of such claim has accepted the plan; and terminates all rights and interests of equity security holders provided for by the plan.

    C.    <u>Satisfaction of Claims.</u> Upon confirmation of this Plan, all creditors, equity security holders, partners, and other parties in interest who have or assert any claim or cause of action against Debtors shall be deemed to have acknowledged that their respective claims are fully satisfied by the distribution set forth herein, and each of the claims or causes of action, whether liquidated or contingent, known or unknown, scheduled or unscheduled, filed or unfiled, asserted or assertable, is declared and shall be, for all purposes, fully released and satisfied in full.

    D.    <u>Parties Bound.</u> The provisions of the Plan will bind Debtors, all creditors, and all other parties in interest. The Plan is intended to resolve significant controversies between Debtors and creditors, for which litigation would have the effect of delaying reorganization, consuming scarce assets and potentially jeopardizing the entire reorganization. If the Court confirms the Plan, a creditor whose claim against Debtors is released pursuant to the terms of this Plan is bound by such terms, notwithstanding any objection to the Plan or vote to reject the Plan.

    E.    <u>Preservation of Bankruptcy Causes of Action.</u> Any and all causes of action which Debtors may have, or which may arise under any of the provision of the Bankruptcy

Code, or which may be enforceable under any of the provisions of the Bankruptcy Code or any other law or statute, shall be preserved and this Court shall retain jurisdiction to dispose of such causes of action. All such causes of action shall belong to Debtors as part of the assets retained pursuant to confirmation.

F. <u>Stay in Effect.</u> During the pendency of this Plan, and unless the Plan or the Bankruptcy Court otherwise expressly provides, all creditors will continue to be stayed from proceeding against Debtors or its assets.

G. <u>Securities Exemption.</u> Any satisfaction provided to any creditor or other party in interest pursuant to this Plan, which might be deemed a security, is exempt from registration under federal and state securities laws pursuant to Section 1145 of the Bankruptcy Code. Absent registration or another exemption from the requirements of registration pursuant to the securities laws, the subsequent transfer of any such securities is not so exempt.

V. EXECUTORY CONTRACTS

On July 19, 2019, the Debtors filed a Motion for Order Approving Assumption of Non-Residential Leases [Docket No. 175]. The motion seeks approval to assume a number of leases at the following locations:

| Store No. | Location |
|---|---|
| 1 | 815 W Bannock St, Boise, ID 83702 |
| 2 | 131 Main St, Logan, UT 84321 |
| 3 | 2214 Washington Blvd, Ogden, UT 84401 |
| 4 | 414 East 200 South, Salt Lake City, UT 84111 |
| 5 | 2030 South 900 East, Salt Lake City, UT 84105 |
| 6 | 1346 Fort Union Blvd, Cottonwood Heights, UT 84121 |
| 7 | 541 East 12300 South, Draper, UT 84020 |

12

| 8 | 471 E St George Blvd, St. George, UT 84770 |
| 9 | 2030 South 900 East, Salt Lake City, UT 84105 (HQ) |

The only objection to the motion was filed by BS Property, LLC, the landlord for the Cottonwood Heights location [Docket No. 186]. The Debtors are working toward a resolution of that objection. The Debtors intend to assume the other leases and will submit an order approving the assumption prior to the hearing on confirmation of the Plan. All other executory contracts not expressly assumed are rejected.

VI. <u>JURISDICTION</u>

Notwithstanding confirmation of this Plan, the United States Bankruptcy Court for the District of Arizona shall retain jurisdiction for the following purposes:

A. To adjudicate any and all objections to the allowance of claims to the extent permitted by law and amendments to schedules;

B. To adjudicate any and all disputes arising under the Plan;

C. To adjudicate any and all applications for allowance of compensation and reimbursement of expenses arising herein;

D. To adjudicate any and all pending applications for acceptance or rejection of executory contracts and unexpired leases, and to adjudicate the allowance of any claims resulting from the rejection thereof;

E. To adjudicate any and all applications, adversary proceeding and contesting and litigated matters pending in the case as of the Confirmation Date;

13

F.   To administer and enforce the provisions of this Plan;

G.   To modify any provision of the Plan to the full extent permitted by the Bankruptcy Code;

H.   To correct any defect, cure any omission or reconcile any inconsistency in the Plan or the Confirmation Order as may be necessary to carry out the purpose and intent of the Plan;

I.   To adjudicate such other matter as may be provided for in the Confirmation Order or as may from time to time be authorized under the provisions of the Bankruptcy Code or any other applicable law;

J.   To enforce all orders, judgments, injunctions and rulings entered in connection with the case; and

K.   To enter such orders as may be necessary or appropriate in aid of confirmation and to facilitate implementation of the Plan.

VII.   MODIFICATION OF PLAN

Debtors retain the right to modify the Plan in accordance with the provisions of Chapter 11 of the Bankruptcy Code.  Every modification of the Plan will supersede the previous version of Plan, when such modification becomes effective.  When superseded, the previous versions of the Plan are null and void and without effect for any purpose whatsoever, by Debtors or any other party.

14

A. <u>Pre-Confirmation.</u> In accordance with Section 1127(a) of the Bankruptcy Code, modifications of this Plan may be proposed in writing by Debtors at any time before confirmation, provided that the Plan, as modified, meets the requirements set forth in Sections 1122 and 1123 of the Bankruptcy Code and Debtors complies with Section 1125 of the Bankruptcy Code. Upon application by Debtors, no notice or hearing will be required, nor amendment to the Disclosure Statement, provided the Court finds that such modification does not materially or adversely affect any creditor or class of creditors or other parties in interest.

B. <u>Post-Confirmation.</u> In accordance with Section 1127(b) of the Bankruptcy Code, the Plan may be modified by Debtors at any time after its confirmation and before its substantial consummation, provided that (i) the Plan, as modified, meets the requirements set forth in Sections 1122 and 1123 of the Bankruptcy Code, (ii) the circumstances then existing justify such modification, and (iii) the Bankruptcy Court confirms the Plan, as modified, pursuant to Section 1129 of the Bankruptcy Code.

VIII. <u>MISCELLANEOUS</u>

A. <u>Time Constraints.</u> Whenever any act required to be performed pursuant to this Plan falls on a weekend, national holiday, or state holiday, that act shall instead be performed without penalty on the following business day.

B. <u>Headings.</u> The headings used in the Plan are for convenience only, and neither constitute a portion of the Plan nor affect the construction of the Plan.

C.  Definitions.  The definitions set out in Section II of the Disclosure Statement shall apply to terms used in this Plan.

D.  Severability. Should any provision in the Plan be determined to be unenforceable following the Effective Date, such determination shall in no way limit or affect the enforceability and operative effect of any and all other provisions of the Plan.

E.  Governing Law. Except to the extent that the Bankruptcy Code or other federal law is applicable, the rights, duties and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with the laws of the State of Arizona.

F.  Successors and Assigns. The rights, duties and obligations of any party named or referred to in this Plan shall be binding upon, and shall inure to the benefit of that party's successors and assigns.

Dated this ___ day of October, 2019.

**DAVIS MILES, MCGUIRE GARDNER, PLLC**

/s/ Pernell W. McGuire
Pernell W. McGuire
Aubrey L. Thomas