# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| In re:<br><br>EVEN STEVENS SANDWICHES, LLC, *et al.*<br><br>                                        Debtors.<br><br>This filing applies to:<br><br>☐ All Debtors<br><br>☒ Specified Debtors<br><br>Even Stevens Sandwiches, LLC<br>Even Stevens Utah, LLC<br>Even Stevens Idaho, LLC | Chapter 11<br><br>Case No.: 2:19-bk-03236-DPC<br>(Jointly Administered)<br><br>**ORDER GRANTING EMERGENCY MOTION FOR AUTHORITY TO OBTAIN POST-PETITION FINANCING ON A SECURED BASIS** |

This matter having come before the Court on the *Emergency Motion for Authority to Obtain Post-Petition Financing on a Secured Basis* (the "Motion") [Dkt # 222], and the Court having considered the Motion, the Official Unsecured Creditors Committee's Limited Objection thereto [Dkt # 249], and after notice and a hearing, it is hereby,

1

**ORDERED** granting the Motion pursuant to 11 U.S.C. § 364(c)(2) and (c)(3). It is further,

**ORDERED** authorizing the Debtor Even Stevens Sandwiches, LLC to enter into the Secured Promissory Note and Security Agreement attached hereto as Exhibits A and B.

**DATED AND SIGNED ABOVE.**

# SECURED PROMISSORY NOTE

_____, 2019
Salt Lake City, Utah                                                                               $_____

**FOR VALUE RECEIVED, Even Stevens Sandwiches, LLC**, a Utah limited liability company (the "***Company***"), promises to pay to the order of Take 2 LLC, or its registered assigns ("***Holder***"), the principal sum of up to five hundred thousand dollars ($500,000), exact amount to be determined based on total amount of funded draws.

1. <u>Definitions</u>. For purposes of this Note, the following terms shall have the following meanings (capitalized terms used herein but not otherwise defined shall have the meanings provided therefor in the Agreement):

"***Business Day***" means any day which is not a Saturday or Sunday or a legal holiday on which banks are authorized or required to be closed in Salt Lake City, Utah.

2. <u>Fees</u>. Company shall pay Holder the following fees (the "***Fees***"):

(a) A fee equal to 10% of the total funded loan amount listed above in lieu of any interest on the principal amount of this Note.

(b) Company shall reimburse Holder for any transaction costs associated with funding this Note, including but not limited to wire transfer fees, and any other transaction fees related to moving funds.

3. <u>Maturity</u>. Unless sooner paid, the entire unpaid principal amount and all Fees shall become fully due and payable on the earlier of 90 days from execution or the acceleration of the maturity of this Note by the Holder upon the occurrence of an Event of Default (the "***Maturity Date***").

4. <u>Payments</u>.

(a) <u>Form of Payment</u>. All payments shall be in lawful money of the United States of America to Holder, at the address specified in the Agreement, or at such other address as may be specified from time to time by Holder in a written notice delivered to the Company.

(b) <u>Prepayment</u>. The Company shall have the right to prepay any and all amounts owed under this Note in whole or in part at any time, provided that any such prepayment must be accompanied by all Fees.

5. <u>Default</u>.

(a) <u>Events of Default</u>. For purposes of this Note, any of the following events which shall occur shall constitute an "***Event of Default***":

(i) any indebtedness under this Note is not paid when and as the same shall become due and payable, whether at maturity, by acceleration, or otherwise, and any such amount shall remain unpaid for a period of thirty (30) days after the delivery of notice of nonpayment;

(ii) the Company shall (A) apply for or consent to the appointment of a receiver, trustee, custodian or liquidator of itself or any part of its property, (B) become subject to the appointment of a receiver, trustee, custodian or liquidator for itself or any part of its property if such appointment is not terminated or dismissed within one-hundred eight (180) days, (C) make an assignment for the benefit of creditors, or (D) fail generally or admit in writing to its inability to pay its debts as they become due;

(iii) the Company shall liquidate, wind up or dissolve;

(iv) the Company shall have any change of control or management, which results in any of the following individuals being appointed to the Company's Board of Managers (or other governing body, as may be applicable) or appointed as an officer of the Company.

    (1) Steven Down
    (2) Susan Knight
    (3) John Neubauer
    (4) David Down

(b) Consequences of Events of Default. If any Event of Default shall occur for any reason, whether voluntary or involuntary, and continue for more than one hundred eighty (180) days, Holder may, upon notice or demand, declare the outstanding indebtedness under this Note to be due and payable, whereupon the outstanding indebtedness under this Note shall be and become immediately due and payable, and the Company shall immediately pay to Holder all such indebtedness.

(c) Default Interest. Additionally, upon the occurrence of an Event of Default, the outstanding principal amount shall accrue simple interest at the rate of fifteen percent (15%) per annum ("**Default Interest**"). Interest will be computed on the basis of a 365-day year consisting of twelve (12) thirty (30) day months, and for any periods shorter than a full calendar month, on the basis of the actual number of days elapsed in such period. Interest on this Note will accrue from the most recent date to which interest has been paid or, if no interest has been paid, from the date of such Event of Default.

6. Security. The Note shall be secured by the collateral as defined in that certain Security Agreement by and between the Parties (the "**Security Agreement**"), which is attached as Exhibit A hereto.

7. Governing Law. This Note is to be construed in accordance with and governed by the laws of the State of Utah.

8. Notices. Except as may be otherwise provided herein, all notices, requests, waivers and other communications made pursuant to this Note shall be made in accordance with the Agreement.

9. Severability. If one or more provisions of this Note are held to be unenforceable under applicable law, such provision shall be excluded from this Note and the balance of the Note shall be interpreted as if such provision were so excluded and shall be enforceable in accordance with its terms.

10. Payments. Whenever any payment of cash is to be made by the Company to the Holder pursuant to this Note, such payment shall be made in lawful money of the United States of America by either (a) a check drawn on the account of the Company and sent via overnight courier service to Holder at such address as previously provided to the Company in writing (which address, in the case of Holder as of the date of issuance hereof, shall initially be the address for Holder as set forth in the Agreement) or (b) via wire transfer of immediately available funds. Whenever any payment to be made shall otherwise be due on a day that is not a Business Day, such payment shall be made on the immediately succeeding Business Day.

[SIGNATURES FOLLOW ON NEXT PAGE]

IN WITNESS WHEREOF, the Company has caused this Note to be duly executed by its officers, thereunto duly authorized as of the date first above written.

**COMPANY:**

EVEN STEVENS SANDWICHES, LLC

_____
Brooks Pickering, Manager

## SECURITY AGREEMENT

This Security Agreement (this "**Security Agreement**") dated _____, 2019 (the "**Effective Date**"), is entered into by and between Even Stevens Sandwiches, LLC, a Utah limited liability company (the "**Borrower**"), and Take 2, LLC ("**Lender**"). Any capitalized term not otherwise defined herein shall have that same meaning ascribed to such term in the Note, as hereinafter defined below.

## RECITALS

**WHEREAS,** in connection with that certain Secured Promissory Note entered into by and among Lender and Borrower, dated of even date hereto (the "**Note**"), Borrower has agreed to enter into this Security Agreement and to grant to Lender a security interest in the Collateral described below, in order to induce Lender to enter into the Note.

## AGREEMENT

**NOW THEREFORE**, in consideration of the above recitals and for other good and valuable consideration, the receipt and adequacy of which are hereby acknowledged, Borrower and Lender hereby agree as follows:

1. <u>Definitions and Interpretation</u>. When used in this Security Agreement, the following terms have the following respective meanings:

"*Collateral*" as used in this Agreement means the following described property, whether now owned or hereafter acquired, whether now existing or hereafter arising, and wherever located, in which Borrower is giving to Lender a security interest for the payment of the Obligations and performance of all other obligations under the Note and this Agreement:

All right, title and interest now or hereafter acquired in and to all of the following described personal property and all substitutions, replacements, increases, additions, accessions, attachments, insurance refunds, products and proceeds for or to any of the following described personal property without limitation (collectively, the "Collateral"); (a) all inventory, (b) all accounts, contract rights, documents, documents of title, payment intangibles, investment property, letter of credit rights, commercial tort claims, chattel paper, instruments, (including promissory notes), deposit accounts, and supporting obligations, (c) all fixtures and equipment including but not limited to, any equipment, tools, parts, supplies, attachments, accessories, (d) all general intangibles, including, but not limited to, all intellectual property, including but not limited to all trade secrets, payment intangibles, computer software, service marks, trademarks, trade names, trade styles, copyrights, patents, applications for any of the foregoing, customer lists, working drawings, instructional manuals and rights in processes; (e) all rents and profits of any Collateral, all rights under warranties and insurance contracts covering the Collateral, and any causes of action related to the Collateral; and (f) books, data and records pertaining to any Collateral, in whatever form, all equipment including but not limited to any computer readable memory and any computer hardware or software necessary to utilize, create, maintain and process such memory, records and data on electronic media.

"*Lien*" shall mean, with respect to the Collateral, any security interest, mortgage, pledge, lien, claim, charge or other encumbrance in, of, or on such property or the income therefrom.

"*Obligations*" means all obligations arising or owed by the Borrower to Lender or its affiliates under the Note or this Security Agreement.

"*Person*" shall mean and include an individual, a partnership, a corporation (including a business trust), a joint stock company, a limited liability company, an unincorporated association, a joint venture or other entity or a governmental authority.

"*UCC*" means the Uniform Commercial Code as in effect in the State of Utah from time to time.

Unless otherwise defined herein, all terms defined in the UCC have the respective meanings given to those terms in the UCC.

2. Grant of Security Interest

(a) As security for the Obligations, Borrower hereby pledges and grants to Lender a security interest in all right, title and interests of Borrower in and to the Collateral; *provided*, *however*, that unless or until there is a default on the Note, any and all distributions and other amounts payable on the Collateral shall be paid to the holder or registered owner of the Collateral.

(b) Borrower hereby irrevocably authorizes Lender, to the extent that the Lender deems it necessary or advisable, to file in any filing office in any UCC jurisdiction any initial financing statements and amendments thereto that identifies the Collateral and provides any other information required by part 5 of Article 9 of the UCC for the sufficiency or filing office acceptance of any financing statement or amendment.

3. General Representations and Warranties. Borrower represents and warrants to Lender that (i) the Borrower is the owner of the Collateral and, except as otherwise provided on **Schedule One** below, that no other Person has any right, title, claim or interest (by way of Lien or otherwise) in, against or to the Collateral; and (ii) upon execution of this Security Agreement and the proper filing of documents with the applicable governmental authority, Lender will have a perfected security interest in and to the Collateral. Notwithstanding anything to the contrary in this Agreement or the Note, Lender does hereby acknowledge and agree that Schedule One contains a list of liens that are senior to and have priority over any security interest of Lender. Until such time as any such liens are paid in full by Company, Lender will be in a junior position.

4. Covenants Relating to Collateral. Borrower hereby agrees (i) to perform all acts that may be necessary to maintain, preserve, protect and perfect the Collateral, the Lien granted to Lender therein, and the perfection and priority of such Lien; (ii) to pay promptly when due all taxes and other governmental charges, all Liens and all other charges now or hereafter imposed upon or affecting any Collateral; (iii) to procure, execute and deliver from time to time any endorsements, assignments, financing statements and other writings reasonably deemed necessary or appropriate by Lender to maintain and protect its Lien hereunder and the priority thereof and to deliver promptly upon the request of Lender all originals of the Collateral; (iv) to appear in and defend any action or proceeding which may affect their respective titles to the Collateral or Lender's interest in the Collateral; (v) not to surrender or lose possession of (other than to Lender), sell, encumber, lease or otherwise dispose of or transfer the Collateral or right or interest therein, and to keep the Collateral free of all Liens; and (vi) to notify Lender in the event that any obligation, material or otherwise, becomes past due or otherwise delinquent.

5. Litigation and Other Proceedings. Upon the occurrence and during the continuation of an Event of Default, as defined in the Note, Lender shall have the right but not the obligation to bring suit or institute proceedings in the name of Lender to enforce any rights in the Collateral, in which event Borrower shall at the request of Lender do any and all lawful acts and execute any and all documents reasonably required by Lender in aid of such enforcement.

6. <u>Default and Remedies</u>.

(a) <u>Default</u>. Borrower shall be deemed in default under this Security Agreement upon the occurrence and during the continuance of an Event of Default, as defined in the Note.

(b) <u>Remedies</u>. Upon the occurrence and during the continuance of any Event of Default, Lender shall have the rights of a secured creditor under the UCC and all rights granted by this Security Agreement, and by law.

(c) <u>Bankruptcy Stay</u>. Upon the occurrence and during the continuance of any Event of Default, notwithstanding any other provision of this Agreement, Lender shall take no action to enforce its rights under this Agreement without first obtaining an order from the United States Bankruptcy Court for the District of Arizona modifying the automatic stay imposed by 11 U.S.C. § 362, permitting such enforcement.

7. <u>Miscellaneous</u>.

(a) <u>Notices</u>. Except as otherwise provided herein, all notices, requests, demands, consents, instructions or other communications to or upon Borrower or Lender under this Security Agreement shall be in writing and faxed, mailed or delivered to each party to the facsimile number or the address set forth in the signature page hereof.

(b) <u>Nonwaiver</u>. No failure or delay on the part of Lender in exercising any of its rights hereunder will operate as a waiver thereof or of any other right nor shall any single or partial exercise of any such right preclude any other further exercise thereof or of any other right.

(c) <u>Amendments and Waivers</u>. This Security Agreement may not be amended or modified, nor may any of its terms be waived, except by written instruments signed by the Borrower and Lender. Each waiver or consent under any provision hereof shall be effective only in the specific instances for the purpose for which given.

(d) <u>Assignments</u>. This Security Agreement shall be binding upon and inure to the benefit of Lender and Borrower and their respective successors and assigns; *provided*, *however*, that Borrower may not sell, assign or delegate rights and obligations hereunder without the prior written consent of Lender, which may be given or withheld for any or for no reason.

(e) <u>Cumulative Rights, etc</u>. The rights, powers and remedies of Lender under this Security Agreement shall be in addition to all rights, powers and remedies given to Lender by virtue of any applicable law, rule or regulation of any governmental authority and the Note, all of which rights, powers, and remedies will be cumulative and may be exercised successively or concurrently without impairing Lender's rights hereunder. Borrower waives any right to require Lender to proceed against any person or entity or to exhaust any Collateral or to pursue any remedy in Lender's power.

(f) <u>Payments Free of Taxes, Etc</u>. All payments made by Borrower under the Note will be made by Borrower free and clear of and without deduction for any and all present and future taxes, levies, charges, deductions and withholdings.

(g) <u>Partial Invalidity</u>. If at any time any provision of this Security Agreement is or becomes illegal, invalid or unenforceable in any respect under the law of any jurisdiction, neither the legality, validity or enforceability of the remaining provisions of this Security Agreement nor the legality,

validity or enforceability of such provision under the law of any other jurisdiction shall in any way be affected or impaired thereby.

(h) <u>Construction</u>. Each of this Security Agreement and the Note (collectively, the "**Loan Documents**") is the result of negotiations among, and has been reviewed by, Borrower and Lender. Accordingly, the Loan Documents will be deemed to be the product of all parties hereto, and no ambiguity shall be construed in favor of or against Borrower or Lender.

(g) <u>Entire Agreement</u>. The Loan Documents constitute and contain the entire agreement of Borrower and Lender as to the matters pertaining hereto and supersede any and all prior agreements, negotiations, correspondence, understandings and communications among the parties, whether written or oral, respecting the subject matter hereof.

(h) <u>Governing Law</u>. This Security Agreement shall be governed by and construed in accordance with the laws of the State of Utah without reference to conflicts of law rules.

(i) <u>Counterparts</u>. This Security Agreement may be executed in any number of counterparts, each of which shall be an original, but all of which together shall be deemed to constitute one instrument.

(j) <u>Waiver of Right to Jury</u>. In order to avoid delays and minimize expense Borrower and Lender knowingly, voluntarily and intentionally waive any right to trial by jury in respect of any claim, demand, action or cause of action arising out of, under or in connection with this Agreement or any related writing or any amendment thereto, whether now existing or hereinafter arising and whether sounding in contract or tort or otherwise, and each party hereby agrees and consents that any such claim, demand, action or cause of action shall be decided by a court trial without a jury, and a copy of this Agreement may be filed with any court as evidence of the consent of each of the parties hereto to the waiver of its right.

**IN WITNESS WHEREOF**, Borrower has executed and delivered this Security Agreement as of the day and year first above written.

| **BORROWER:** | **LENDER:** |
|---|---|
| Even Stevens Sandwiches, LLC | Take 2, LLC |
| By:_____ | By:_____ |
|     Brooks Pickering, Manager | Its:_____ |