**Davis Miles**
**McGuire Gardner**

40 E. Rio Salado Pkwy., Suite 425
Tempe, AZ 85281
Telephone: (480) 733-6800
Fax: (480) 733-3748
efile.dockets@davismiles.com

Pernell W. McGuire – SBN 015909
M. Preston Gardner – SBN 029868
*Attorneys for Debtors*

## IN THE UNITED STATES BANKRUPTCY COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| In re: | Chapter 11 |
| EVEN STEVENS SANDWICHES, LLC, *et al.* | Case No.: 2:19-bk-03236-DPC |
| | (Jointly Administered) |
| Debtors. | |
| This filing applies to: | |
| ☐ All Debtors | **DEBTORS' JOINT PLAN OF REORGANIZATION DATED FEBRUARY 5, 2021** |
| ☒ Specified Debtors | |
| Even Stevens Sandwiches, LLC Even Stevens Utah, LLC Even Stevens Idaho, LLC | |

I.  <u>INTRODUCTION</u>

Even Stevens Sandwiches, LLC, Even Stevens Utah, LLC, and Even Stevens Idaho, LLC, the debtors-in-possession (collectively, the "Debtors") submit this Joint Plan of Reorganization Dated February 5, 2021 (the "Plan"). This Plan provides for the sale of equity in Even Stevens Sandwiches, LLC to a new investor, Blue Lemon/Take 2, LLC, or its assigns,

1

subject to higher and better offers (the "Buyer"), as part of the plan confirmation process. The Plan provides for the reorganization of the Debtors by (1) substantively consolidating the Debtors' assets and liabilities for purposes of voting and distributions to holders of Allowed Claims; (2) retiring, cancelling, extinguishing and/or discharging the prepetition equity interests in Even Stevens Sandwiches, LLC; (3) issuing New Equity in the Reorganized Debtor to a new investor at an auction held in connection with the final plan confirmation hearing, and also issuing a smaller portion of New Equity to Class 4 General Unsecured Creditors; (4) creating the Distribution Trust to disburse the Consideration received from the new investor and pursue certain avoidance claims and causes of action for the benefit of Creditors.

## II.  CLASSIFICATION AND TREATMENT OF CLAIMS

A.  Defined Terms.  In addition to any terms defined elsewhere in the Disclosure Statement or Plan, the following terms have the indicated meanings:

Administrative Claim:  A Claim for payment of an administrative expense of a kind specified in 11 U.S.C. §§503(b) or 1114(e)(2) and entitled to priority pursuant to Code §507(a)(1), including, but not limited to, (a) the actual, necessary costs and expenses, incurred after the Petition Date, of preserving the bankruptcy estate and operating the Debtors' business, (b) all Allowed Claims of Professionals appointed by the Bankruptcy Court, (c) all fees and charges assessed against the Bankruptcy Estate under 28 U.S.C. §1930, and (d) all Allowed Claims that are entitled to be treated as Administrative Claims pursuant to a Final Order of the Bankruptcy Court under Code §546(c)(2).

Allowed Claim.  A claim that (i) is liquidated and has been scheduled as undisputed, or (ii) for which a proof of claim has been filed that has not been objected to or that has been objected to but has been allowed by the Court.

2

Allowed DIP Claim:  This term means the Administrative Claim of the DIP Lender in the amount of $300,000.

Allowed Interest.  An interest that (i) has been scheduled as undisputed, or (ii) for which a proof in interest has been filed that has not been objected to or that has been objected to but has been allowed by the Court.

Allowed Priority Claim:  The Allowed Claim of a Claimant that is entitled to priority in payment under 11 U.S.C. §507(a)(2) through (a)(8).

Allowed Secured Claim:  An Allowed Claim to the extent that such Allowed Claim is secured by a lien which is unavoidable, on property in which the estate has an interest, to the extent of the value of such Creditor's interest in the estate's interest in such property as determined in light of the purpose of the valuation and of the proposed disposition and use of such property and determined as of the Petition Date.

Allowed Unsecured Claim:  An Allowed Claim to the extent that such Allowed Claim is not secured by a lien on property in which the estate has an interest.

Ballot:  Each of the ballot forms distributed with the Disclosure Statement to holders of Impaired Claims entitled to vote as specified in this Plan in connection with the solicitation of acceptances of this Plan.

Bankruptcy Code.  Title 11 of the United States Code.

Bankruptcy Court.  The United State Bankruptcy Court for the District of Arizona.

Bankruptcy Rule:  The Federal Rules of Bankruptcy Procedure as amended and the Local Rules of the Bankruptcy Court, as applicable to the Chapter 11 Case or proceedings therein, as the case may be.

BAPCPA:  Shall mean the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, as amended.

Bar Date:  The date, if any, designated by the Bankruptcy Court as the last date for filing Proofs of Claim or Interest against the Debtors.

3

<u>Beneficial Interest</u>:  This term means an interest that entitles the holder thereof to a Distribution in accordance with the Distribution Trust Agreement.

<u>Beneficiary</u>:  This term means the holder of a Beneficial Interest, whether individually or as agent on behalf of other entities.

<u>Causes of Action</u>:  This term means all claims, actions, causes of action, choses in action, suits, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances, trespasses, damages, judgments, remedies, rights of setoff or recoupment, third-party claims, counterclaims, and cross claims, including without limitation, all claims and any avoidance, preference, recovery, subordination or other actions against Creditors, insiders, or any other entities under the Bankruptcy Code, and any and all state and common-law claims for breach of fiduciary duty against the Debtors' current or former directors, officers, managers, or members, based in law or equity, including without limitation, under the Bankruptcy Code, whether direct, indirect, derivative, or otherwise and whether asserted or unasserted as of the Effective Date.

<u>Chapter 11</u>:  Chapter 11 of the United States Bankruptcy Code, 11 U.S.C. §1101, <u>et seq</u>.

<u>Charter Documents</u>:  This terms means the articles of organization, operating agreements, and bylaws of the Debtors or Reorganized Debtor, as applicable, and any amendments to the foregoing.

<u>Claim</u>:  This terms means (a) a right to payment, whether or not such right is reduced to judgment, liquidated, un-liquidated, fixed, contingent, matured, un-matured, disputed, undisputed, legal, equitable, secured or unsecured, which right arose or accrued prior to the date of Confirmation, or; (b) a right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, un-matured, disputed, undisputed, secured, or unsecured, where such right arose or accrued prior to Confirmation, or; (c) a claim arising under 11 U.S.C. §502(g).

<u>Claimant or Creditor</u>:  Any person or entity that asserts a claim.

<u>Class</u>:  A category of holders of Claims or Interests as described in this Plan.

Closing:  This term means the closing of the transactions contemplated under Article III of the Plan.

Committee:  The Committee of Unsecured Creditors appointed by the Office of the U.S. Trustee.

Confirmation:  The signing by the Court of the Confirmation Order.

Confirmation Date.  The date on which the Court enters the Confirmation Order.

Confirmation Hearing:  The hearing held by the Bankruptcy Court regarding confirmation of the Plan, as it may be continued from time to time.

Confirmation Order.  The order of the Court confirming the Plan.

Consideration:  This terms means the cash paid by the Buyer in exchange for New Equity. If Blue Lemon/Take 2 is the Buyer, the amount of the Consideration will be $2,716,670 (total purchase price of $3,016,670 and $300,000 to be offset for amounts payable under the DIP Loan).

Consolidated Estate.  This term means the estate created under Article III of the Plan, only for the purposes of voting and distributions to holders of Allowed Claims under the Plan, by consolidating the Debtors' Estates.

Consolidated Estate Assets:  This term means the assets retained by the Consolidated Estate comprised of: (i) cash; (ii) the Sale Proceeds; (iii) all Litigation and Causes of Action; (iv) all Claims and rights of the Debtors under any insurance policy; and (v) any and all other assets, interests, rights, claims, and defenses of the Debtors or Estates, including without limitation, all rights under any order of the Bankruptcy Court.

Creditor:  Shall mean a Person that has a Claim against the Debtor that arose on or before the Petition Date or that has a Claim against the Debtor's estate of any kind specified in §§502(g), 502(h), or 502(i) of the Bankruptcy Code.

Debtor(s):  The term Debtor and/or Debtors means collectively: Even Stevens Sandwiches, LLC, Even Stevens Utah, LLC, and Even Stevens Idaho, LLC (but not Even Stevens Washington, LLC).

DIP Lender:  Take 2, LLC.

5

Distribution.  The cash to be distributed under the Plan to holders of Allowed Claims.

Distribution Trust: The trust established under the Plan and the Distribution Trust Agreement.

Distribution Trust Account:  The segregated interest bearing account established by the Distribution Trust into which shall be deposited (a) the Distribution Trust Fund, (b) the proceeds of the Distribution Trust Avoidance Actions, and (c) the proceeds of the liquidation of all other Distribution Trust Assets.

Distribution Trust Agreement:  This term means the trust agreement that establishes the Distribution Trust and governs the powers, duties, and responsibilities of the Distribution Trustee and the Oversight Board. The Distribution Trust Agreement shall be part of the Plan Supplement.

Distribution Trust Assets:  This term means, collectively, (a) the Causes of Action and (b) the Distribution Trust Fund.
Distribution Trust Available Cash:  The cash on deposit in the Distribution Trust Account at any time, less the Distribution Trust Operating Reserve.

Distribution Trust Fund:  This term means the Consideration to be funded to the Distribution Trust Account after payment of certain obligations on the Effective Date, including the Allowed DIP Claim.

Distribution Trust Operating Expenses:  This term means the reasonable costs and expenses, including professional fees, of the Distribution. Trustee in administering the Distribution Trust.

Distribution Trust Operating Reserve:  This term means such reserve of Cash determined- from time to time by the Distribution Trustee pursuant to the Distribution Trust Agreement to be reasonably necessary to pay Distribution Trust Operating Expenses, including (a) the unpaid liabilities, debts, or obligations of the Distribution Trust; (b) the fees and expenses of the Distribution Trustee; (c) all fees and expenses of professionals retained by the Distribution Trust; and (d) any and all other costs associated with the liquidation or preservation of the Distribution Trust Assets.

6

Distribution Trust Register:  The register of Beneficial Interests in the Distribution Trust.

Distribution Trust Registrar:  The registrar of the Distribution Trust Register appointed by the Distribution Trustee.

Distribution Trustee:  The Person appointed to administer the Distribution Trust with such rights, duties, and obligations as set forth in the Distribution Trust Agreement, subject to the authority of the Oversight Board.

Disclosure Statement:  The Debtors' disclosure statement and any amendments and supplements thereto as approved by an order of the Bankruptcy Court.

Disputed Claim:  A Claim which the Debtor listed as un-liquidated, disputed or contingent in its schedules or to which an objection has been field which has not been resolved by a final order of the Bankruptcy Court.

Effective Date.  The first day of the month following no less than 30 days after the Confirmation Order has been entered.

Equity Interests.  This term means any equity interest in any Debtors, including, but not limited to, all issued, unissued, authorized, or outstanding membership interests, shares, or stock, together with any warrants, options, or contract rights to purchase or acquire such interests at any time.

Estates.  This term means the Debtors' collective bankruptcy estates created under 11 U.S.C. § 541.

Even Stevens Sandwiches.  This term means the Debtors' restaurant business that was operated collectively through each of the Debtor entities.

Examiner.  This term means the Chapter 11 examiner, Lynton Kotzin.

Final Order:  An order or judgment which has not been stayed.

Impaired:  When used with reference to a Claim or Interest, a Claim or Interest that is impaired within the meaning of Code §1124.

Insider.  Any person or entity defined as an insider in Section 101 of the Bankruptcy Code.

Intercompany Claims.  This term means any claims between any of the Debtors.

Interest:  Any equity interest in the Debtor as of the Effective Date.

Interest Holder:  Any person or persons owning an interest in the Debtor as of the Effective Date.

IRS:  The Internal Revenue Service.

Lead Case.  This term means the Debtors' jointly administered Chapter 11 case, Case No. 2:19-bk-03236-DPC.

New Equity:  This term means the all of the equity interest in the Reorganized Debtor, issued on the Effective Date, with 92% issued to the Buyer and 8% issued pro rata to Class 4 Claimants, free and clear of all liens, claims and encumbrances of any kind, except as provided in the Plan.

Oversight Board:  The three (3) person board appointed by the Committee to oversee, direct and approve the actions of the Distribution Trustee in accordance with the Distribution Trust Agreement. The initial members of the Oversight Board shall be identified prior to the Effective Date.

Person:  An individual, corporation, partnership, joint venture, association, joint stock company, trust, unincorporated association or organization, governmental agency, or associated political subdivision.

Petition:  The original petitions filed by the Debtors under Chapter 11.

Plan.  The Debtors' Joint Plan of Reorganization Dated February 5, 2021, together with any modifications or supplements thereto as may be filed by the proponent of the Plan.

Plan Supplement:  This terms means, collectively, any such documents as are referenced as such in this Plan to be filed hereeafter to supplement or clarify aspects of the Plan

Proof of Claim:  The proof of claim that must be filed by a holder of an Impaired Claim by the Bar Date.

Pro-Rata:  Proportionately so that the ratio of the amount of consideration distributed on account of an Allowed Claim in a particular class to the amount of consideration distributed on all Allowed Claims in the same class, is the same as the ratio of the amount of that Allowed Claim to all Allowed Claims in the same class.

Protected Parties:  (Each one, a "Protected Party") means (a) the Debtors; (b) the Reorganized Debtor; (c) the Distribution Trust; (d) the Distribution Trustee; (e) the Plan Sponsor and its affiliates; (f) the DIP Lender; (g) the Committee and its members; and (h) directors, officers, agents, attorneys, accountants, consultants, equity holders, financial advisors, investment bankers, professionals, experts, and employees of any of the foregoing, in their respective capacities as such. Any affiliate or other party related to any Protected Party shall also be a Protected Party to the extent that such affiliate or related party is alleged or charged to be directly or indirectly liable on any derivative, vicarious liability, alter ego or other theory for imposing liability on an affiliate or related party for the conduct or liability of the Protected Party.

Reorganized Debtor:  The Debtors following confirmation, as reorganized by this Plan.

B.     Undefined Terms.  A term used but not defined herein, but that is defined in the Bankruptcy Code, has the meaning given to that term in the Bankruptcy Code.

## III.     IMPLEMENTATION OF THE PLAN

The Plan contemplates the sale of equity in Even Stevens Sandwiches, LLC to a new investor, Blue Lemon/Take 2, LLC, or its assigns, subject to higher and better offers (the "Buyer"), as part of the plan confirmation process. The Plan provides for the reorganization of the Debtors by (1) substantively consolidating the Debtors' assets and liabilities for purposes of voting and distributions to holders of Allowed Claims; (2) retiring, cancelling, extinguishing and/or discharging the prepetition equity interests in Even Stevens Sandwiches, LLC; (3) issuing New Equity to the Buyer in exchange for the Consideration

and a smaller portion of New Equity to Class 4 General Unsecured Creditors; (4) creating the Distribution Trust to disburse the Consideration and pursue certain avoidance claims and causes of action for the benefit of Creditors.

A. <u>Continued Corporate Existence</u>.

Except as otherwise provided in the Plan, the Reorganized Debtors will continue to exist after the Effective Date as a limited liability company, with all of the powers of a limited liability company under applicable law in the jurisdiction in which the Debtors are incorporated and pursuant to their Charter Documents in effect before the Effective Date, as such documents are amended by or pursuant to the Plan.

Upon the Effective Date, and without any further action by the members or Board of Managers of the Reorganized Debtor, the Reorganized Debtor's Charter Documents shall be deemed amended (a) to the extent necessary, to incorporate the provisions of the Plan, and (b) to prohibit the issuance by the Reorganized Debtor of nonvoting securities to the extent required under section 1123(a)(6) of the Bankruptcy Code, subject to further amendment of such Charter Documents as permitted by applicable law.

B. <u>Arrangements with the Distribution Trustee</u>.

The execution and consummation of this Plan will be facilitated through the Distribution Trust. The Distribution Trustee shall be authorized pursuant to the terms of the Plan to act on behalf of the Debtors to administer and implement the Plan. Only to the extent necessary, from and after the Effective Date, the Distribution Trustee will act for the Debtors in the same

fiduciary capacity as applicable to a board of managers of the Debtors in implementing the terms of the Plan. All compensation for the Distribution Trustee shall be paid from the Distribution Trust Assets in accordance with the Distribution Trust Agreement. The approved person shall serve as the Distribution Trustee on execution of the Distribution Trust Agreement at the Closing.

C. <u>Sale of New Equity</u>.

The Debtors will hold an auction at the final confirmation hearing for the sale of 92% of the New Equity in Even Stevens Sandwiches, LLC. The bidding procedures for the sale of New Equity will be established by separate order of the Court, with the auction and final hearing regarding the sale to coincide with the plan confirmation hearing. The "stalking horse" bidder will be a yet-to-be-formed LLC owned and managed by Blue Lemon/Take 2, LLC for a sale price of $3,016,670, or such higher and better offer that makes itself known to the Debtors prior to the final hearing on confirmation, on the following terms: $1,850,000 paid at closing, minus $300,000 loaned to Debtors as part of the Financing Motion—resulting in a cash infusion of $1,550,000 on the Effective Date; and fixed semi-annual payments in the amount of $116,667 beginning six (6) months after the Effective Date and continuing for sixty (60) for a total of $1,166,670. Upon closing, the Buyer will receive 92% of the New Equity and the Class 4 General Unsecured Creditors will receive a pro rata portion of 8% of the New Equity.

\\\

Case 2:19-bk-03236-DPC    Doc 605    Filed 02/05/21    Entered 02/05/21 17:21:42    Desc
Main Document    Page 11 of 35

D.  <u>The Closing</u>.

The Closing of the transactions required and contemplated under the Plan shall take place on the Effective Date. All documents to be executed and delivered by any party as provided in this Article VI and all actions to be taken by any party to implement the Plan as provided herein shall be in form and substance satisfactory to the Debtors. The following actions shall occur at or before the Closing (unless otherwise specified), and shall be effective on the Effective Date of the Plan:

1) <u>Execution of Documents and Corporate Action</u>. The Debtors shall deliver all documents and perform all actions reasonably contemplated with respect to implementation of the Plan. Brooks Pickering, or his designee, is authorized (i) to execute on behalf of the Debtors, in a representative capacity and not individually, any documents or instruments after the Confirmation Date or at the Closing that may be necessary to consummate the Plan and (ii) to undertake any other action on behalf of the Debtors to consummate the Plan. Each of the matters provided for under the Plan involving the corporate structure of the Debtors or corporate action to be taken by or required of the Debtors will, as of the Effective Date, be deemed to have occurred and be effective as provided herein, and shall be authorized, approved, and (to the extent taken before the Effective Date) ratified in all respects without any requirement of further action by the members, creditors, or managers of the Debtors.

2) <u>Cancellation of Equity Interests and Issuance of New Equity</u>. On the Effective Date, all prepetition equity interests of the Debtors shall be retired, cancelled, extinguished and/or discharged in accordance with the terms of the Plan, and the New Equity of the Reorganized Debtor shall be issued. The New Equity shall be free and clear of all Liens, Claims, and encumbrances of any kind, except as otherwise provided in the Plan.

12

3) <u>Execution and Ratification of the Distribution Trust Agreement</u>. On the Effective Date, the Distribution Trust Agreement shall be executed by all parties thereto. The Distribution Trust Agreement shall be provided in the Plan Supplement. Each holder of a Claim shall be deemed to have ratified and become bound by the terms and conditions of the Distribution Trust Agreement.

4) <u>Transfer of Distribution Trust Assets</u>. All property of the Debtors constituting the Distribution Trust Assets shall be conveyed and transferred by the Debtors to the Distribution Trust, free and clear of all Liens, Claims, interests, and encumbrances.

E. <u>Substantive Consolidation</u>.

This Plan constitutes a motion for substantive consolidation of the Debtors' assets and liabilities only for purposes of Plan voting and distributions to holders of Allowed Claims. Confirmation of this Plan shall constitute the Bankruptcy Court's order granting of that motion. Substantively consolidating the Debtors' assets and liabilities on the Effective Date will create a Consolidated Estate with the following effect: (a) consolidates the cases into the Lead Case as a single case; (b) consolidates all of the assets of the Estates into the Consolidated Estate only for purposes of Plan voting and distributions to holders of Allowed Claims under the Plan; (c) converts all Claims against any of the estates into Claims against the Consolidated Estate such that any proof of Claim filed against one or more of the Debtors is deemed to be a single Claim filed against the Consolidated Estate, and all duplicate proofs of claim for the same Claim filed against more than one Debtor are deemed expunged; (d) disallows, discharges, and eliminates all Intercompany Claims and precludes any distributions under the Plan on account of Intercompany Claims; (e)

eliminates and discharges all guarantees by one Debtor of the obligations of any other Debtor or in favor of any other Debtor and precludes any distributions under the Plan on account of Claims based on such guarantees; and (f) for purposes of determining the availability of the right of setoff under § 553 of the Code, treats the Debtors as one consolidated entity so that, subject to the other provisions of § 553, debts due to any Debtor may be set off against the debts of any other Debtor.

Substantive consolidation under the Plan does not affect valid, enforceable, and unavoidable liens, except for liens that secure a Claim that is eliminated by virtue of substantive consolidation. Substantive consolidation under the Plan does not create a Claim in a Class different from the Class in which a Claim would have been placed in the absence of substantive consolidation. The substantive consolidation contemplated in the Plan does not affect any applicable date for purposes of pursuing Causes of Action, if any.

F.  Tax Treatment of the Distribution Trust.

The Distribution Trust established under this Plan is established for the purpose of satisfying General Unsecured Claims by liquidating the Distribution Trust Assets transferred to the Distribution Trust and performing related and incidental functions referenced in the Distribution Trust Agreement, and the Distribution Trust shall have no objective of continuing or engaging in any trade or business except to the extent reasonably necessary to, and consistent with, the liquidating purpose of the trust. The purpose of the Distribution Trust is to provide a mechanism for the liquidation of the Distribution Trust

14

Assets, and to distribute the proceeds of the liquidation, net of all claims, expenses, charges, liabilities, and obligations of the Distribution Trust, to the Beneficiaries in accordance with the terms of the Plan. No business activities will be conducted by the Distribution Trust other than those associated with or related to the liquidation of the Distribution Trust Assets. It is intended that the Distribution Trust be classified for federal income tax purposes as a "liquidating trust" within the meaning of the Treasury Regulations Section 301.7701-4(d). All parties and Beneficiaries shall treat the transfers in trust described herein as transfers to the Beneficiaries for all purposes of the Internal Revenue Code of 1986, as amended (including Sections 61(a)(12), 483, 1001, 1012, and 1274 thereof). All the parties and Beneficiaries shall treat the transfers in trust as if all the transferred assets, including all the Distribution Trust Assets, had been first transferred to the Beneficiaries and then transferred by the Beneficiaries to the Distribution Trust. The Beneficiaries shall be treated for all purposes of the Internal Revenue Code of 1986, as amended, as the grantors of the Distribution Trust and the owners of the Distribution Trust. The Distribution Trustee shall file returns for the Distribution Trust as a grantor trust pursuant to Treasury Regulations Section 1.671-4(a) or (b). All parties, including the Beneficiaries and the Distribution Trustee, shall value the Distribution Trust Assets consistently, and such valuations shall be used for all federal income tax purposes. Beneficiaries may wish to consult with a tax professional regarding the tax consequences of holding a Beneficial Interest in or receiving a Distribution from the Distribution Trust.

15

G.  <u>Right to Enforce, Compromise, or Adjust Distribution Trust Assets</u>.

The Distribution Trustee shall have and retain the sole and full power, authority, and standing to prosecute, compromise, or otherwise resolve the Causes of Action assigned to the Distribution Trust, subject to the terms and conditions set forth in the Distribution Trust Agreement and the rights of the Oversight Board thereunder. All proceeds derived from such causes of action shall constitute Distribution Trust Assets.

H.  <u>Vesting of Property in Reorganized Debtor</u>.

On the Effective Date, except as otherwise expressly provided in this Plan or the Confirmation Order, all Estate Property, other than the Distribution Trust Assets, shall vest in the Reorganized Debtor free and clear of all Liens, Claims, and encumbrances of any kind.

I.  <u>Exemption from Transfer Taxes</u>.

This Plan and the Confirmation Order provide for (a) the issuance, transfer or exchange of notes, debt instruments and equity securities under or in connection with the Plan; (b) the creation, assignment, recordation or perfection of any lien, pledge, other security interest or other instruments of transfer; (c) the making or assignment of any lease; (d) the creation, execution and delivery of any agreements or other documents creating or evidencing the formation of the Reorganized Debtor or the issuance or ownership of any interest in the Reorganized Debtor; or (e) the making or delivery of any deed or other instrument of transfer under the Plan in connection with the vesting of the Debtors' assets in

16

the Reorganized Debtor or the Distribution Trustee pursuant to or in connection with the Plan, including, without limitation, merger agreements, equity purchase agreements, agreements of consolidation, restructuring, disposition, liquidation or dissolution, and transfers of tangible property. Pursuant to section 1146 of the Bankruptcy Code and the Plan, any such act described or contemplated in the Plan will not be subject to any stamp tax, transfer tax, filing or recording tax, or other similar tax.

J.   Corporate Action.

On the Effective Date, any new corporate governance documents shall be effective, and the appointment of managers and/or officers of the Reorganized Debtor, and all actions contemplated hereby shall be authorized and approved in all respects pursuant to the Plan. All matters provided for in the Plan involving the corporate structure of the Debtors or Reorganized Debtor, and any corporate action required by the Debtor or Reorganized Debtor in connection with the Plan, shall be deemed to have occurred and shall be in effect as of the Effective Date, without any requirement of further action by the managers and/or equity owners of the Debtors or Reorganized Debtor. On the Effective Date, the appropriate managers of the Reorganized Debtor are authorized and directed to issue, execute, and deliver the agreements, documents, securities, and instruments contemplated by the Plan in the name of and on behalf of the Reorganized Debtor without the need for any required approvals, authorizations, or consents, except for any express consents required under the Plan.

17

# IV.   CLASSIFICATION AND TREATMENT OF CLAIMS

A.   **Allowance of Claims**. A Claim will receive a distribution under the Plan only if it is an "Allowed Claim." Except as expressly stated in the Plan, or as allowed by the Court, no interest, penalty, late charge or additional charges such as attorneys' fees, shall be added to any claim after it has been allowed.

Creditors whose claims were not scheduled by Debtors or were scheduled as contingent, unliquidated, or disputed are required to file a proof of claim in order to participate in the reorganization, and such proofs of claim must be filed prior to the separate bar date has been set by the Court, or unless the claim arises out of the operation of the Plan, such as rejection of executory contracts and leases, or deficiency claims arising out of the abandonment of collateral to previously secured creditors. Proofs of claims are deemed allowed unless objected to by Debtors or other party in interest, and if an objection is filed, the Bankruptcy Court must determine whether the claim should be allowed.

B.   **Classification of Claims**. The Plan allows the following classes of claims:

1.   **Class 1: Administrative Claims**.  This Class consists of allowed Administrative Claims under §§ 503(b) and 507(a)(1) and (2), including, without limitation, the Allowed Claims of Debtors' professionals, any other professionals approved by the Court, any quarterly fees payable to the United States Trustee, and other claims of creditors holding Administrative Claims, including the post-Effective Date costs and expenses of liquidating the Consolidated Estate Assets and administering the Plan.

18

Currently, the following professionals and creditors have asserted administrative claims against one or more of the Debtors.

| Name of Creditor | Amount |
|---|---|
| Davis Miles McGuire Gardner | 280,000.00 |
| Unsecured Creditors Counsel | 96,882.01 |
| Examiner | 104,000.00 |
| Examiner Counsel | 48,000.00 |
| US Trustee Fees | 21,008.00 |
| Utah State Tax Commission (Jan-Nov 2020) | 546,279.44 |
| Idaho State Tax Commission | 7,853.46 |
| IRS (post petition) Sandwiches | 102,672.33 |
| IRS (Utah) | 10,430.21 |
| IRS (post petition) Utah | 346,620.79 |
| IRS (post petition) Idaho | 63,496.48 |
| Seed money for litigation counsel | 10,000.00 |
| Additional estimated professional fees | 50,000.00 |
| **Total =** | **$1,687,242.72** |

2.      Class 2 Secured Claim.  Class 2 consists of the Allowed Secured Claim of Standard Industries, Inc., secured by an interest in certain equipment of Even Stevens Utah, LLC as described in their security agreement (restaurant and other equipment).

3.      Class 2A Secured Claim.  Class 2A consists of the Allowed Secured Claim of the Internal Revenue Service, secured by an interest in Debtor Even Stevens Utah LLC's assets.

4.      Class 2B Secured Claim.  Class 2B consists of the Allowed Secured Claim of Cache County Treasurer, secured by an interest in Debtor Even Stevens Utah, LLC's assets.

5.    Class 2C Secured Claim.   Class 2C consists of the Allowed Secured Claims of certain vehicle lenders, secured by an interest in various vehicles owned by Debtor Even Stevens Sandwiches, LLC and which will be retained. The Class 2C Claims are as follows (collectively, the "Retained Vehicle Claimants"):

| Creditor Name | Amount of Claim | Security Interest | Debtor |
|---|---|---|---|
| Citizens Bank | $13,655.93 | Vehicle Lien (VIN ending #0992) | Even Stevens Sandwiches |
| Citizens Bank | $10,970.43 | Vehicle Lien (VIN ending #2969) | Even Stevens Sandwiches |
| Ally Bank | $21,121.70 | Vehicle Lien (VIN ending #0739) | Even Stevens Sandwiches |
| Ally Bank | $20,824.48 | Vehicle Lien (VIN ending #8538) | Even Stevens Sandwiches |
| Ally Bank | $24,240.91 | Vehicle Lien (VIN ending #2906) | Even Stevens Sandwiches |
| Chrysler Capital | $6,371.48 | Vehicle Lien (VIN ending #9603) | Even Stevens Sandwiches |
| Chrysler Capital | $4,601.14 | Vehicle Lien (VIN ending #3570) | Even Stevens Sandwiches |
| Chrysler Capital | $4,598.60 | Vehicle Lien (VIN ending #6678) | Even Stevens Sandwiches |
| Chrysler Capital | $4,736.37 | Vehicle Lien (VIN ending #7321) | Even Stevens Sandwiches |
| Wells Fargo Bank | $24,424.53 | Vehicle Lien (VIN ending #2690) | Even Stevens Sandwiches |

6.    Class 2D Secured Claim.   Class 2D consists of the Allowed Secured Claims of certain vehicle lenders, secured by an interest in various vehicles owned by Debtor Even Stevens Sandwiches, LLC and which will be surrendered. The Class 2D Claims are as follows (collectively, the "Surrendered Vehicle Claimants"):

| Creditor Name | Amount of Claim | Security Interest | Debtor |
|---|---|---|---|
| Ally Bank | $20,720.18 | Vehicle Lien (VIN ending #0868) | Even Stevens Sandwiches |
| Ally Bank | $24,348.74 | Vehicle Lien (VIN ending #5686) | Even Stevens Sandwiches |
| Citizens Bank | $13,655.93 | Vehicle Lien (VIN ending #0996) | Even Stevens Sandwiches |
| Chrysler Capital | $14,820.26 | Vehicle Lien (VIN ending #2901) | Even Stevens Sandwiches |
| Chrysler Capital | $15,425.99 | Vehicle Lien (VIN ending #2888) | Even Stevens Sandwiches |
| Chrysler Capital | $17,330.75 | Vehicle Lien (VIN ending #9073) | Even Stevens Sandwiches |
| Chrysler Capital | $13,245.08 | Vehicle Lien (VIN ending #2210) | Even Stevens Sandwiches |
| Chrysler Capital | $16,711.31 | Vehicle Lien (VIN ending #6555) | Even Stevens Sandwiches |
| Chrysler Capital | $17,617.58 | Vehicle Lien (VIN ending #2914) | Even Stevens Sandwiches |
| Chrysler Capital | Unknown | Vehicle Lien (VIN ending #1443) | Even Stevens Sandwiches |

7.    Class 3 Priority Claims.  Class 3 consists of all Allowed Priority

Unsecured Claims as follows:

| Creditor Name | Amount of Asserted Claim | Debtor |
|---|---|---|
| Idaho Tax Commission | $37,901.94 | Even Stevens Idaho |
| IRS | $63,944.60 | Even Stevens Sandwiches |
| IRS | $18,759.69 | Even Stevens Idaho |
| IRS | $251,549.40 | Even Stevens Utah |
| Utah Tax Commission | $265,344.06 | E.S. Sandwiches/Utah |
| Weber County Assessor | $2,624.10 | Even Stevens Utah |
| Estimated interest payable on priority claims through plan | $100,000.00 | |
| TOTAL = | $740,123.79 | |

8.     <u>Class 4 General Unsecured Claims</u>.   Class 4 consists of all Allowed General Unsecured Claims.

9.     <u>Class 5 Member Equity Interests</u>.  Class 5 consists of all Equity Interests in Even Stevens Sandwiches, LLC.

C.     <u>Treatment of Claims</u>.  The Plan provides for the following treatment of claims:

1.     <u>Treatment of Class 1</u>.  Unless otherwise agreed, the holders of Allowed Class 1 Administrative Claims will be paid in full, in cash, by the earlier of:  (1) the Effective Date, or (2) the date that such claims are allowed and ordered paid by the Court. Applications for approval of Administrative Claims must be filed with the Court, and copies must be served upon the Debtors and the Liquidating Agent unless exempted by applicable law. Any holder of an Administrative Claim that fails to timely file a final application for approval of such Administrative Claim shall be deemed to have waived its Claim, and the Claim will be disallowed. Pending Court approval, the Debtors shall set aside enough funds to pay all estimated Allowed Administrative Claims until Court approval has been obtained. Class 1 is unimpaired under the Plan.

2.     <u>Treatment of Class 2</u>.  The Class 2 claimant, Standard Industries, Inc., filed multiple proofs of claim in excess of $500,000.00. The Class 2 Claim is secured by certain restaurant equipment with a fair market value of no more than $103,031.71. Standard Industries, Inc. shall have an Allowed Secured Claim in the amount of $103,031.71. The Allowed Class 2 Secured Claim shall, on account of and in full and complete settlement,

22

release and discharge of, and in exchange for, such Secured Claim, have its Claim satisfied by the Reorganized Debtor in semi-annual installments over a period of sixty (60) months with interest at the rate of 3.5% per annum. The balance of the Allowed Claim of Standard Industries, Inc. shall be treated as a Class 4 General Unsecured Claim, subject to the Debtors' right to object to Standard Industries, Inc.'s proofs of claim. Class 2 is impaired and entitled to vote on the Plan.

3.    <u>Treatment of Class 2A</u>.  The Allowed Class 2A Secured Claim of the Internal Revenue Service shall, on account of and in full and complete settlement, release and discharge of, and in exchange for, such Secured Claim, have its Claim satisfied by the Reorganized Debtor in semi-annual installments over a period of sixty (60) months with interest at the rate of 4% per annum. Class 2A is impaired and entitled to vote on the Plan.

4.    <u>Treatment of Class 2B</u>.  The Allowed Class 2B Secured Claim of Cache County shall, on account of and in full and complete settlement, release and discharge of, and in exchange for, such Secured Claim, have its Claim satisfied by the Reorganized Debtor in semi-annual installments over a period of sixty (60) months with interest at the rate of 4% per annum. Class 2B is impaired and entitled to vote on the Plan.

5.    <u>Treatment of Class 2C</u>.  The Allowed Class 2C Secured Claims of the Retained Vehicle Claimants shall, on account of and in full and complete settlement, release and discharge of, and in exchange for, such Secured Claims, have their Claims satisfied by the Reorganized Debtor in the full amount of their Allowed Secured Claims pursuant to the terms

of the prepetition contracts. The Retained Vehicle Claimants will retain their prepetition security interests and state-law rights. Alternatively, the Debtors may return the collateral on or before the Effective Date in full satisfaction of a creditor's Allowed Claim. Class 2C is impaired and entitled to vote on the Plan.

6.     Treatment of Class 2D.  The Debtors will surrender the collateral to the Class 2D claimants in full and complete satisfaction, release, and discharge of the creditors' claims. The Surrendered Vehicle Claimants will look to their collateral for any recovery. Class 2D is impaired and entitled to vote on the Plan.

7.     Treatment of Class 3.  The Allowed Class 3 Priority Unsecured Claims shall, on account of and in full and complete settlement, release and discharge of, and in exchange for, such Priority Claims, have their Claims satisfied by the Reorganized Debtor in full after payment of the Class 1 Administrative Claims. The Allowed Class 3 Priority Unsecured Claims will share pro rata in semi-annual payments until the Claims are paid in full. Unless otherwise agreed, the Class 3 Claims shall be entitled to payment within five (5) years of the Petition Date and interest at applicable statutory rates. Class 3 is impaired and entitled to vote on the Plan.

8.     Treatment of Class 4. The Allowed Class 4 General Unsecured Claims shall, on account of and in full and complete settlement, release and discharge of, and in exchange for, such General Unsecured Claims, have their Claims satisfied by the Reorganized Debtor after payment of all Allowed Administrative, Priority, and Secured Claims, by pro rata

distributions of any funds remaining from the Consideration; and, in the event Blue

Lemon/Take 2 is the Buyer at the proposed equity sale, Class 4 General Unsecured Creditors

will also share pro rata in 8% of the New Equity in the Reorganized Debtor. In addition, the

Class 4 General Unsecured Creditors will share pro rata in the funds recovered by the

Distribution Trustee from Causes of Action after payment of applicable administrative

expenses. Class 4 is impaired and entitled to vote on the Plan.

Treatment of Class 5. No distributions will be made to holders of Allowed Class

5 Equity Interests. On the Effective Date, all Allowed Class 5 Equity Interests shall be

deemed automatically cancelled, released, and extinguished without further action by the

Debtors or the Reorganized Debtor, and the obligations of the Debtors and Reorganized

Debtor thereunder shall be discharged. Class 5 is deemed to have rejected the Plan and,

therefore, the holders of Allowed Class 5 Equity Interests are not entitled to vote on the Plan.

THE DEBTORS BELIEVE THAT THIS PLAN PROVIDES THE GREATEST

AND EARLIEST POSSIBLE RECOVERIES TO CREDITORS. THUS, THE DEBTORS

BELIEVES THAT ACCEPTANCE OF THE PLAN IS IN THE BEST INTEREST OF

EACH AND EVERY CLASS OF CREDITOR, AND RECOMMENDS THAT EACH

CLASS VOTE TO ACCEPT THE PLAN.

V. DISTRIBUTIONS

The Distribution Trustee shall make all Distributions required to be made under the

Plan, including Distributions from the Distribution Trust.

25

A.    <u>Distributions to Allowed Claims Only</u>.  Distributions from Available Cash shall be made only to the holders of Allowed Claims. Until a Disputed Claim becomes an Allowed Claim, the holder of that Disputed Claim shall not receive a Distribution from Available Cash.

B.    <u>Place and Manner of Payments of Distributions</u>.  Except as otherwise specified in the Plan, Distributions from Available Cash shall be made by mailing such Distribution to the Creditor at the address listed in any proof of claim filed by the Creditor or at such other address as such Creditor shall have specified for payment purposes in a written notice received by the Distribution Trustee at least twenty (20) days before a Distribution Date. If a Creditor has not filed a proof of claim or interest or sent the Distribution Trustee a written notice of payment address, then the Distributions) for such Creditor will be mailed to the. address identified in the Schedules of Assets and Liabilities. The Distribution Trustee shall distribute any Cash by wire, check, or such other method as it deems appropriate under the circumstances. Before receiving any Distributions, all Creditors, at the request of the Distribution Trustee, must provide written notification of their respective Federal Tax Identification Numbers or Social Security Numbers to the Distribution Trustee; otherwise, the Distribution Trustee may suspend Distributions to any Creditors who have not provided their Federal Tax Identification Numbers or Social Security Numbers.

C.    <u>Undeliverable Distributions</u>.  If a Distribution made from Available Cash to any Creditor is returned as undeliverable, the Distribution Trustee shall use reasonable efforts to determine such Creditor's then current address. If the Distribution Trustee cannot determine, or

26

is not notified of, a Creditor's then current address within six months after the Effective Date, the Distribution reserved for such Creditor shall be deemed an unclaimed Distribution.

D.     Unclaimed Distributions.  If the current address for a Creditor entitled to a Distribution from Available Cash under the Plan has not been determined within six months after the Effective Date or such Creditor has otherwise not been located or submitted a valid Federal Tax Identification Number or Social Security Number to the Distribution Trustee, then such Creditor (i) shall no longer be a Creditor and (ii) shall be deemed to have released such Claim.

E.     Dissolution.

1)     The Distribution Trustee and Distribution Trust shall be discharged or dissolved, as the case may be, at such time as all of the Distribution Trust Assets have been distributed pursuant to the Plan and the Distribution Trust Agreement; provided, however, that in no event shall the Distribution Trust be dissolved later than three (3) year's from the creation of the Distribution Trust unless the Bankruptcy Court, upon motion within the six-month period prior to the third (3rd) anniversary (or within the six-month period prior to the end of an extension period), determines that a fixed period extension (not to exceed three (3) years, together with any prior extensions, without a favorable private letter ruling from the Internal Revenue Service or an opinion of counsel satisfactory to the Distribution Trustee that any further extension would not adversely affect the status of the trust as a liquidating trust for

27

United States federal. income tax purposes) is necessary to facilitate or complete the liquidation of the Distribution Trust Assets.

        2)     If at any time the Distribution Trustee determines, in reliance upon such professionals as a Distribution Trustee may retain, that the expense of administering the Distribution Trust so as to make a final distribution to Distribution Trust Beneficiaries is likely to exceed the value of the assets remaining in the Distribution Trust, the Distribution Trustee may (i) reserve any amount necessary to dissolve the Distribution Trust, (ii) donate any balance to a charitable organization (A) described in section 501(c)(3) of the Internal Revenue Code, (B) exempt from United States federal income tax under section 501(a) of the Internal Revenue Code, (C) not a "private foundation," as defined in section 509(a) of the Internal Revenue Code, and (D) that is unrelated to the Debtor, the Distribution Trust, and any insider of the Distribution Trustee, and (iii) dissolve the Distribution Trust.

## VI.    EFFECT OF CONFIRMATION AND DISCHARGE

### A.    **Legally Binding Effect**.

**The provisions of the Plan shall bind all Creditors and Interest Holders, whether or not they accept the Plan and wherever located. On and after the Effective Date, all holders of Claims and Equity Interests shall be precluded and enjoined from asserting any Claim or Equity Interest against the Debtors or its assets or properties based on any transaction or other activity of any kind that occurred prior to the Confirmation Date except as permitted under the Plan.**

**B.** **Discharge and Release.**

**Except as otherwise expressly provided in the Plan, the rights afforded in the Plan and the treatment of all Claims and Equity Interests shall be in exchange for and in complete satisfaction, discharge, and release of all Claims and Equity Interests of any nature whatsoever, against the Debtor or its Estate, assets, properties or interests in property. Except as otherwise provided herein, or in any Plan Documents, on the Effective Date, all Claims against and Interests in the Debtor shall be satisfied, discharged, and released in full. The Reorganized Debtor shall not be responsible or liable for any duties, obligations, responsibilities, or liabilities of the Debtor except those expressly assumed by them in the Plan.**

**C.** **Discharge Injunction.**

**Except as otherwise expressly provided in the Plan, the discharge and release set forth in Article VI.B shall also operate as an injunction permanently prohibiting and enjoining the commencement or continuation of any action or the employment of process with respect to, or any act to collect, recover from, or offset (a) any Claim discharged and released in Article VI.B and (b) any cause of action, whether known or unknown, based on the same subject matter as any Claim discharged and released in Article VI.B. Except as otherwise expressly provided in the Plan, all Persons shall be precluded and forever barred from asserting against the Debtors and Reorganized Debtor, their successors or assigns, or their assets, properties, or interests in property any other or further Claims, or any other right to legal or equitable relief regardless of whether such right can be reduced to a right to payment, based upon any act or omission, transaction, or other activity of any kind or nature that occurred prior to the Effective Date, whether or not the facts of or legal bases therefor were known or existed prior to the Effective Date.**

\\\

\\\

29

**D.    Exoneration and Reliance.**

**To the extent allowed by law, the Protected Parties shall not be liable, other than with respect to criminal liability under applicable law, willful misconduct, or bad faith under applicable law, to any holder of a Claim or Equity Interest or any other Person with respect to any action, omission, forbearance from action, decision, oi- exercise of discretion taken at any time after the Petition Date in connection with or related to the Chapter 11 Case, including without limitation, the negotiation, formulation, development, proposal, disclosure, solicitation, confirmation or implementation of the sales process and the Plan, and except with respect to criminal liability under applicable law, willful misconduct or bad faith under applicable law, all such Persons are permanently enjoined from initiating a suit against any Protected Party. For purposes of this paragraph, Protected Parties excludes the Distribution Trustee, Distribution Trust, the Plan Sponsor and DIP Lender. Nothing in this Article VI.C shall prevent the enforcement of the terms of the Plan.**

**E.    Additional Releases.**

**To the extent allowed by applicable law, on, and as of, the Effective Date and for good and valuable consideration, the receipt and sufficiency of which are acknowledged, the Protected Parties (acting in any capacity whatsoever) shall be forever released and discharged from any and all Claims, obligations, actions, suits, rights, debts, accounts, causes of action, remedies, avoidance actions, agreements, promises, damages, judgments, demands, defenses, or claims in respect of equitable subordination, and liabilities throughout the world under any law or court ruling through the Effective Date (including all Claims based on or arising out of facts or circumstances that existed as of or prior to the Plan in the Bankruptcy Case, including Claims based on negligence or strict liability, and further including any derivative claims asserted on behalf of the Debtors, whether known or unknown, foreseen or unforeseen, existing or hereinafter**

30

**arising, in law, equity or otherwise, that the Debtors, their Estates, or the Reorganized Debtor would have been legally entitled by applicable law to assert in its own right, whether individually or collectively) which the Debtors, their Estates, the Reorganized Debtor, Creditors or other Persons receiving or who are entitled to receive Distributions under the Plan may have against any of them in any way related to the Bankruptcy Case or the Debtor (or its predecessors); provided, however, the releases provided for in this paragraph shall not extend to any claims by any Governmental Unit with respect to criminal liability under applicable law, willful misconduct or bad faith under applicable law, or ultra vires acts under applicable law. No compliance with or reliance on the applicable law or the orders of the Bankruptcy Court shall be deemed or permitted to be included, declared, or ruled to be in any way wrongful, in bad faith, ultra vires, inequitable or otherwise subject to any sanction or punishment, all of which are preempted, superseded and negated by the Plan to the maximum extent permitted by applicable law.**

**A vote to accept the Plan, or failure to vote by a creditor entitled to vote, constitutes an acceptance of all of the terms and provisions contained in the Plan, including, but not limited to, the grant of releases, injunctions, exculpation, exoneration and other limitations of liability in the Plan. If a creditor votes to reject the Plan, the creditor may nevertheless be deemed to be bound to the releases and be bound by the injunctions, exculpations, and other limitations of liability in the Plan to the maximum extent permitted by law, as later determined by the Court. If a creditor elects NOT to grant the releases contained in this Article VI.E of the Plan, to (1) the Plan Sponsor and its affiliates, (2) the DIP Lender, and (3) directors, officers, agents, attorneys, accountants, consultants, equity holders, financial advisors, investment bankers, professionals, experts, and employees of any of the foregoing, in their respective capacities as such, then the creditor must opt-out in the Ballot. Election to withhold consent is at the creditor's option.**

VII.    EXECUTORY CONTRACTS

The Debtors are party to various commercial leases at locations where Even Stevens Sandwiches currently operates or has operated restaurants. The Debtors intend to assume the leases listed below and assign them to the highest bidder at auction at the time of the final hearing on confirmation of the Plan.

| Store No. | Location |
|---|---|
| 1 | 815 W Bannock St, Boise, ID 83702 |
| 2 | 131 Main St, Logan, UT 84321 |
| 3 | 2214 Washington Blvd, Ogden, UT 84401 |
| 4 | 414 East 200 South, Salt Lake City, UT 84111 |
| 5 | 2030 South 900 East, Salt Lake City, UT  84105 |
| 6 | 1346 Fort Union Blvd, Cottonwood Heights, UT 84121 |
| 7 | 541 East 12300 South, Draper, UT 84020 |
| 8 | 471 E St George Blvd, St. George, UT 84770 |

All other existing executory contracts and unexpired leases will be rejected under the Plan. If you object to the rejection of your contract or lease, you must file and serve your objection to the Plan within the deadline for objecting to the confirmation of the Plan.

***The Deadline for Filing a Proof of Claim Based on a Claim Arising from the Rejection of a Lease or Contract Shall be Fourteen (14) days following the entry of an order confirming the Plan.*** Any claim based on the rejection of a contract or lease will be barred if the proof of claim is not timely filed, unless the Court orders otherwise.

\\\

\\\

VIII.    AVOIDABLE TRANSFERS AND PREFERENCE CLAIMS

Under the Plan, the Distribution Trustee is the Debtors' successor-in-interest to all Causes of Action or other claims that were or could have been brought by Debtors. All of those against whom the Debtors may have claims are placed on notice that it is the express intent of the Plan that all Causes of Action of the Debtors shall be preserved and shall not be deemed compromised or adjudicated by the Confirmation Order or any actions otherwise taken to implement the Plan. To the extent that Causes of Action may exist, the Distribution Trustee will have the authority and discretion to pursue such claims on behalf of the Consolidated Estate after confirmation of the Plan.

IX.    RETENTION OF JURISDICTION

The Court will retain jurisdiction until the Plan has been fully consummated for, including but not limited to, the following purposes:

1.    The Classification of Claims of any Creditors and the re-examination of any Claims which have been allowed for the purposes of voting, and for the determination of such objections as may be filed to the Creditor's Claims. The failure by the Debtors to object to or examine any Claim for the purpose of voting shall not be deemed to be a waiver of the Debtors' rights to object to or to re-examine the Claim in whole or in part.

2.    To determine any Claims which are disputed by the Debtors or Liquidating Agent.

33

3. To determine all questions and disputes regarding title to the assets of the estate, and determination of all causes of action, disputes, or conflicts, whether or not subject to action pending as of the date of Confirmation, between the Debtors and any other party, including but not limited to, any rights of the Debtors to recover assets pursuant to the provisions of the Bankruptcy Code.

4. The correction of any defect, the curing of any omission, or any reconciliation of any inconsistencies in the Plan, or the Confirmation Order, as may be necessary to carry out the purposes and intent of the Plan.

5. The modification of the Plan after Confirmation, pursuant to the Bankruptcy Rules and the Bankruptcy Code.

6. To enforce and interpret the terms and conditions of the Plan.

7. The entry of an order, including injunctions, necessary to enforce the title, rights, and powers of the Debtors, and to impose such limitations, restrictions, terms, and conditions of such title, right, and power that the Court may deem necessary.

8. To hear and determine any rights, claims or causes of action held by or accruing to the Liquidating Agent pursuant to the Bankruptcy Code or pursuant to any federal or state statute or legal theory.

9. The entry of an order concluding and terminating this case.

\\\

\\\

34

DATED this 5th day of February, 2021.

**EVEN STEVENS SANDWICHES**


/s/ Brooks Pickering
Brooks Pickering
Manager of Even Stevens Sandwiches, LLC


**DAVIS MILES, MCGUIRE GARDNER, PLLC**


/s/ M. Preston Gardner
Pernell W. McGuire
M. Preston Gardner
*Attorneys for Debtors*