UNITED STATES BANKRUPTCY COURT
DISTRICT OF ARIZONA

| In re: | Chapter 7 |
|---|---|
| EVEN STEVENS SANDWICHES, LLC; EVEN STEVENS UTAH, LLC; and EVEN STEVENS IDAHO, LLC | Case No. 2:19-bk-03236-DPC |
| | Jointly Administered |
| Debtors. | **ORDER: (1) AUTHORIZING THE SALE OF PROPERTY FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES, AND OTHER INTEREST; (2) APPROVING ASSUMPTION, ASSIGNMENT, AND SALE OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES; AND (3) GRANTING RELATED RELIEF** |

The Court having considered the *Motion for Approval of Sale of Business Fee and Clear of Liens and Encumbrances, Pursuant to 11 U.S.C. § 363; and Motion for Assumption and Assignment of Executory Contracts and Commercial Real Property Leases* [Doc 716] ("**Motion**")[1] filed by Dina L. Anderson in her capacity as the chapter 7 trustee ("**Trustee**") for the above-captioned Debtors, whereby the Trustee sought an order, among other things, (a) authorizing the sale of substantially all of the Debtors' assets and related ancillary transactions ("**Sale Transaction**") to Even Stevens Acquisition

---

[1] Capitalized terms not otherwise defined in this Sale Order retain the definition given to them in the Asset Purchase Agreement (as defined below).

Partners, LLC ("**Purchaser**") under terms of the *Asset Purchase Agreement* attached to the Motion ("**Asset Purchase Agreement**"), (b) approving the assumption, assignment, and sale of the Purchased Contracts under Bankruptcy Code § 365, subject to the terms of the Purchase Agreement, and (c) scheduling an auction (if there were other potential bidders) and hearing for the sale of the Purchased Assets; and notice of the Sale Transaction have been provided [Docs 718, 719, 721, 725, 728, 730] and notice of assumption and assignment contracts and leases having been provided [Docs 726, 729, 730]; and a hearing having been held on July 1, 2021 ("**Sale Hearing**") to consider approval of the Asset Purchase Agreement and Sale Transaction; and adequate and sufficient notice of the Sale Motion having been given to all parties-in-interest in these cases; and all such parties having been afforded due process and an opportunity to be heard with respect to the Sale Motion and all relief requested in the Sale Motion; and the Court having reviewed and considered: (a) the Sale Motion; (b) the objections to the Sale Motion, if any; and (c) the arguments of counsel made, and the evidence proffered or adduced, at the Sale Hearing; and after due deliberation and sufficient cause appearing;

**IT IS HEREBY FOUND AND DETERMINED THAT:**

A. This Court has jurisdiction over the Sale Motion under 28 U.S.C. §§ 157 and 1334, and this matter is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (N) & (O). Venue of these cases and the Sale Motion in this district is proper under 28 U.S.C. §§ 1408 and 1409.

B. The statutory bases for the relief sought in the Sale Motion are Bankruptcy Code §§ 105(a), 363, and 365, Bankruptcy Rules 2002, 6004, and 6006, and Local Rules 6004-1 and 6006-1.

C. As evidenced by the affidavits of service on file with the Court, (i) due, proper, timely, adequate, and sufficient notice, and a reasonable opportunity to object or be heard with respect to the Sale Motion and the relief requested in the Sale

1  Motion, has been provided in accordance with the Bankruptcy Code, the Bankruptcy

2  Rules, the Local Rules, and the Asset Purchase Agreement; (ii) such notice was

3  good, sufficient, and appropriate under the circumstances; and (iii) no other or

4  further notice of the Sale Motion is or will be required.

5        D.      As demonstrated by (i) evidence adduced at and prior to the Sale

6  Hearing and (ii) the representations of counsel made on the record at the Sale

7  Hearing, the Trustee has determined that the Asset Purchase Agreement represents

8  the highest and/or best offer for the Purchased Assets and that no further marketing

9  or sales process with respect to the Purchased Assets is in the best interests of the

10 Debtors' estates or creditors or is likely to lead to an offer that provides consideration

11 in excess of the consideration provided in the Asset Purchase Agreement. The Sale

12 Transaction is non-collusive, duly noticed, substantively and procedurally fair to all

13 parties, and is the result of arm's length negotiations.

14       E.      Upon entry of this order ("**Sale Order**"), the Trustee has full authority

15 to consummate the Sale Transaction.

16       F.      Approval of the Asset Purchase Agreement and consummation of the

17 Sale Transaction is in the best interests of the Debtors, their estates, creditors, and

18 other parties in interest. The Trustee has demonstrated good, sufficient, and sound

19 business purposes and justifications for the sale to the Purchaser under Bankruptcy

20 Code § 363(b).

21       G.      The Asset Purchase Agreement was negotiated, proposed, and entered

22 into by the Trustee and the Purchaser without collusion, in good faith, and from

23 arm's length bargaining positions.

24       H.      The sale price in respect of the Purchased Assets was not controlled by

25 any agreement among potential acquirers of the Debtors' Assets and neither the

26 Trustee nor the Purchaser engaged in collusion or any other conduct that would

cause or permit the Asset Purchase Agreement or Sale Transaction to be avoided

1 under Bankruptcy Code § 363(n). Accordingly, neither the Asset Purchase

2 Agreement nor the Sale Transaction may be avoided and no party shall be entitled to

3 any damages or other recovery pursuant to Bankruptcy Code § 363(n).

4     I.     The Purchaser is a good faith purchaser under Bankruptcy Code

5 § 363(m) and, as such, is entitled to all of the protections afforded thereby. The

6 Purchaser is acting in good faith within the meaning of Bankruptcy Code § 363(m) in

7 consummating the Sale Transaction.

8     J.     The consideration to be provided by the Purchaser pursuant to the

9 Asset Purchase Agreement: (i) is fair and reasonable; (ii) is the highest and/or best

10 offer for the Purchased Assets; (iii) will provide a greater recovery for the Debtors'

11 creditors than would be provided by any other practically available alternative; and

12 (iv) constitutes reasonably equivalent value and fair consideration.

13     K.     The transfer of the Purchased Assets to the Purchaser will be a legal,

14 valid, and effective transfer of the Purchased Assets and will vest the Purchaser with

15 all right, title, and interest of the Debtors to the Purchased Assets free and clear of all

16 Liens, claims, encumbrances, and other interests of any kind and every kind

17 whatsoever (including Liens, claims, encumbrances and interests of any

18 Governmental Body), other than (i) Liens specifically assumed by Purchaser under

19 the Asset Purchase Agreement, (ii) Liquor Licenses or other licenses, registrations,

20 qualifications, or permits necessary to continue operation of the Business that are

21 subject to review and approval by a Governmental Body, and (iii) any alcohol

22 beverage inventory that can be transferred only upon authorization of the pertinent

23 Governmental Body or issuance of the pertinent Liquor License Approval. The

24 Trustee may sell the Purchased Assets free and clear of all such Liens, claims,

25 encumbrances and interests because, in each case, one or more of the standards set

26 forth in Bankruptcy Code § 363(f)(2) and (3) have been satisfied.

L. For purposes of Bankruptcy Code § 363(b)(1), the Debtors may have, in connection with offering a product or service, previously disclosed to one or more individuals a policy prohibiting the transfer of "personally identifiable information" (as defined in 11 U.S.C. § 101(41A)) about individuals to persons that are not affiliated with the Debtors, and the Sale Transaction is consistent with that policy because the Purchaser has agreed to be bound by the same or substantially similar privacy protections as those established by the Debtors' privacy policy.

M. The transfer of the Purchased Assets to the Purchaser or its designee(s), including the assumption by the Debtors and assignment and sale to the Purchaser or its designee(s) of the Purchased Contracts, will not subject the Purchaser or its designee(s) to any liability whatsoever (including any successor liability) with respect to the operation of the Business prior to the Closing or by reason of such transfer, except that the Purchaser or its designee(s), as applicable, shall remain liable for the Assumed Liabilities.

N. The Asset Purchase Agreement is a valid and binding contract between the Debtors (by and through the Trustee) and the Purchaser, which is and shall be enforceable according to its terms.

O. Notice of the Debtors' assumption, assignment and sale to the Purchaser of the Purchased Contracts has been provided to each non-Debtor party thereto, together with a statement therein from the Trustee with respect to the amount, if any, to be paid to such non-Debtor party under Bankruptcy Code § 365(b) as a condition to such assumption, assignment and sale [Doc 726]. With respect to each Purchased Contract, payment of the amounts (each a "**Cure Cost**" and collectively, the "**Cure Costs**") set forth the cure schedule ("**Cure Schedule**") that is annexed to this Sale Order as **<u>Exhibit A</u>** is sufficient for the Debtors to comply fully with the requirements of Bankruptcy Code §§ 365(b)(1)(A) and (B), subject to the exceptions provided herein. To the extent of any inconsistency between the Cure

Case 2:19-bk-03236-DPC    Doc 744    Filed 07/15/21    Entered 07/15/21 15:47:11    Desc
152638702.3
Main Document    Page 5 of 21

1  Schedule attached to this Sale Order and Cure Costs identified in Schedules 1.1(f)
2  and 1.3(b), the Cure Schedule attached to this Sale Order governs. In addition, the
3  Purchaser has provided adequate assurance of its ability to perform its obligations
4  under each of the Purchased Contracts within the meaning of Bankruptcy Code
5  §§ 365(b) and (f)(2)(B), subject to the exceptions provided herein. Therefore, the
6  Purchased Contracts may be assumed by the Debtors and assigned and sold to the
7  Purchaser in accordance with this Sale Order.

8      P.    The Debtors currently hold or have been issued Liquor Licenses or
9  other licenses, registrations, qualifications, or permits necessary to continue
10 operation of the Business that remain in effect authorizing the respective licensees to
11 conduct retail sales of alcohol beverages at certain of the restaurant properties
12 included in the Purchased Assets. Schedule 1.1(i) of the Asset Purchase Agreement
13 identifies (i) each such Liquor License or other license, registration, qualification, or
14 permit; (ii) the property location that is the licensed premises associated with each
15 such Liquor License or other license, registration, qualification, or permit; and
16 (iii) the state or municipal government alcohol regulatory agency respectively
17 responsible for issuing and regulating each such Liquor License or other license,
18 registration, qualification, or permit. The sale of alcohol beverages is an important
19 component of the Business. The Court finds that it is in the best interests of the
20 estates and all other parties in interest for these sales to continue uninterrupted
21 during the transition of ownership from the Debtors to the Purchaser following the
22 Court-ordered transfer of the Purchased Assets, subject to reasonable and good faith
23 efforts to timely transfer existing Liquor Licenses or other licenses, registrations,
24 qualifications, or permits or apply for new licenses, permits, registrations or
25 qualifications equivalent to the existing Liquor Licenses or other licenses,
26 registrations, qualifications, or permits that are not subject to transfer.

Case 2:19-bk-03236-DPC    Doc 744    Filed 07/15/21    Entered 07/15/21 15:47:11    Desc
152638702.3      Main Document      Page 6 of 21

1      Q.    There is other good and sufficient cause to grant the relief requested in

2  the Sale Motion and approve the Asset Purchase Agreement and the Sale

3  Transaction.

4      **THEREFORE, IT IS ORDERED, ADJUDGED AND DECREED THAT:**

5      1.    The Sale Motion is GRANTED as set forth in this Sale Order.

6      2.    Except as otherwise provided in this Sale Order, any objections

7  to the Sale Motion or the entry of this Sale Order that have not been withdrawn,

8  waived or settled, and all reservations of rights included therein, are hereby

9  DENIED and OVERRULED.

10      3.    The Asset Purchase Agreement, including all of its terms and

11  conditions, and the Sale Transaction are hereby approved.

12      4.    Pursuant to Bankruptcy Code §§ 363 and 365, the Debtors (by

13  and through the Trustee) are authorized to (i) execute, deliver, and perform under,

14  consummate, and implement the Asset Purchase Agreement and all additional

15  instruments and documents that are requested by the Purchaser and may be

16  reasonably necessary or desirable to implement the Asset Purchase Agreement, and

17  (ii) take any and all actions as they deem necessary, appropriate, or advisable for the

18  purpose of assigning, transferring, granting, conveying, and conferring to the

19  Purchaser or reducing to Purchaser's possession, the Purchased Assets, or as may be

20  necessary or appropriate to the performance of the obligations as contemplated by

21  the Asset Purchase Agreement, including, without limitation, any and all actions

22  reasonably requested by the Purchaser to effectuate the Asset Purchase Agreement.

23      5.    Pursuant to Bankruptcy Code §§ 105(a), 363(f) and 365(b), upon

24  the Closing: (i) the transfer of the Purchased Assets to the Purchaser pursuant to the

25  Asset Purchase Agreement constitutes a legal, valid, and effective transfer of the

26  Purchased Assets and vests the Purchaser with all right, title, and interest in and to

the Purchased Assets; (ii) the Purchased Assets will be transferred to the Purchaser

Case 2:19-bk-03236-DPC   Doc 744   Filed 07/15/21   Entered 07/15/21 15:47:11   Desc
152638702.3
Main Document   Page 7 of 21

1  free and clear of all Liens, encumbrances, and other interests of any kind and every
2  kind whatsoever (including Liens, claims, encumbrances and interests of any
3  Governmental Body), other than Liens specifically assumed by Purchaser under the
4  Asset Purchase Agreement (if any), in accordance with Bankruptcy Code § 363(f),
5  with any such Liens, claims, encumbrances and interests of which the Purchased
6  Assets are sold free and clear to attach to the proceeds of the Sale Transaction, in the
7  order of their priority, with the same validity, force, and effect which they had
8  against the Purchased Assets prior to the entry of this Sale Order, subject to any
9  rights, claims, and defenses the Debtors and all interested parties may possess with
10 respect thereto; and (iii) each of the Contracts designated as Purchased Contracts at
11 Closing shall be deemed assumed by the Debtors and assigned and sold to the
12 Purchaser as set forth in this Sale order.

13       6.     The Trustee has authority to complete this sale and from the sales
14 proceeds to disburse all amounts necessary to complete the sale including the
15 disbursement of all costs of sale, expenses, liens, secured creditor claims, taxes, and
16 all agreed upon outstanding liabilities necessary to complete the sale.

17       7.     The Arizona Department of Revenue ("**AZDOR**") is deemed to
18 have an allowed secured claim in the amount of $2,500.00 that is secured by a Tax
19 Lien against the Purchased Assets ("**AZDOR Secured Claim**"). The Lien securing
20 the AZDOR Secured Claim will attached to proceeds of the Sale Transaction and the
21 AZDOR Secured Claim will be paid by the Trustee from proceeds of the Sale
22 Transaction at Closing or as soon as reasonably practicable thereafter. The foregoing
23 treatment fully resolves all claims and defenses that the AZDOR, the Trustee, and
24 the Purchaser have as to the AZDOR Secured Claim. All parties rights with respect
25 to Proof of Claim Nos. 146 and 147 asserted by the AZDOR are preserved.

26       8.     Take 2 LLC is deemed to have an allowed secured claim in the
amount of $397,500.00 that is secured by Purchased Assets ("Take 2 Secured

Claim"). The Lien securing the Take 2 Secured Claim will attach to proceeds of the Sale Transaction and the Take 2 Secured Claim will be paid by the Trustee from proceeds of the Sale Transaction at Closing or as soon as reasonably practicable thereafter.

9.     Except as otherwise provided herein, the Sale Order is and will be effective as a determination that all Liens, claims, encumbrances and interests, other than Liens specifically assumed by Purchaser under the Asset Purchase Agreement, shall be and are, without further action by any Person, released with respect to the Purchased Assets as of the Closing Date.

10.     Except to the extent expressly included in the Assumed Liabilities, to enforce the Asset Purchase Agreement, or otherwise provided herein, pursuant to Bankruptcy Code §§ 105 and 363, all persons and entities, including, without limitation, the Debtors, the Official Committee of Unsecured Creditors (the "**Committee**"), all debt security holders, all equity security holders, the Debtors' employees or former employees, governmental, tax, and regulatory or investigatory authorities of any sort, lenders, parties to or beneficiaries under any benefit plan, trade and other creditors asserting or holding any Liens, claims, encumbrances, and other interests of any kind and every kind whatsoever against, in or with respect to any of the Debtors, the Business, or all or any part of the Purchased Assets (whether legal or equitable, secured or unsecured, matured or unmatured, contingent or non-contingent, senior or subordinated), arising under or out of, in connection with, or in any way relating to the Debtors, all or any part of the Purchased Assets, the operation of the Business prior to the Closing Date, or the transfer of the Purchased Assets to the Purchaser are forever barred, estopped, and permanently enjoined from asserting, prosecuting, or otherwise pursuing such Liens, claims, encumbrances, or other interests, whether by payment, setoff, or otherwise, directly or indirectly,

against the Purchaser or any affiliate, successor, or assign thereof, or against the Purchased Assets, except as set forth herein.

11. The Purchaser will not be deemed or considered a successor to the Debtors or the Debtors' estates by reason of any theory of law or equity and the Purchaser has not assumed nor is it in any way responsible for any liability or obligation of the Debtors or the Debtors' estates, except as otherwise expressly provided in the Asset Purchase Agreement or in this Sale Order.

12. Except as otherwise provided in Section 1.1(g) of the Asset Purchase Agreement, any and all causes of action, claims, objections and defenses arising under or deriving from Bankruptcy Code §§ 506(d), 510, 542, 544, 545, 547, 548, 550, 551, 553(b) or 724(a), or any similar state or federal law ("**Avoidance Actions**") and proceeds relating thereto, of the Debtors' estates, are retained and enforceable by the Trustee.

13. Pursuant to Bankruptcy Code § 365, the Debtors (by and through the Trustee) are authorized to assume the Purchased Contracts and assign and sell the Purchased Contracts to the Purchaser. The Seller shall pay the Cure Costs set forth on the Cure Schedule currently with Closing (except as otherwise provided under this Sale order); provided, however, that the Purchaser may direct the removal of any such contract or lease from the list of Purchased Contracts set forth in Schedule 1.1(f) of the Asset Purchase Agreement, in which case such contract or lease will not constitute a Purchased Contract and neither the Debtors, the Trustee, nor the Purchaser will have any obligation to pay any Cure Amount with respect thereto. Purchaser may direct the removal of any Contract from the list of Purchased Contracts set forth in Schedule 1.1(f) of the Asset Purchase Agreement in Purchaser's sole and absolute discretion (i) until the Closing, and (ii) after the Closing, if the Cure Amount for such Contract is subject to dispute as of the Closing and is determined by the Bankruptcy Court after the Closing to be greater than the amount set forth in

Case 2:19-bk-03236-DPC    Doc 744    Filed 07/15/21    Entered 07/15/21 15:47:11    Desc
152638702.3                Main Document        Page 10 of 21

the Cure Schedule or Schedule 1.3(b) of the Asset Purchase Agreement. Notwithstanding anything to the contrary in this Sale Order or the Asset Purchase Agreement, in connection with the Debtors' non-residential real property leases that are being assumed by the Debtors and assigned to the Purchaser pursuant to this Sale Order (collectively, the "**Leases**"), the Debtors and Purchaser shall assume the liability for all accrued, but unbilled, tenant obligations under and to the extent set forth in the Leases for common area maintenance, taxes, rent adjustments, and reconciliations and allocate the claims arising therefrom to the Debtors and Purchaser, accordingly, relating to the period prior to and after the Closing. The allocation set forth herein is independent of the Landlords' rights to receive payment of these amounts, and the Debtors must pay all accrued, but unbilled, tenant obligations under and to the extent set forth in the Leases for common area maintenance, taxes, rent adjustments, and reconciliations when such charges are billed under the Leases in the ordinary course. The Purchaser will indemnify and hold harmless the counterparties to the Leases to the extent set forth in the Leases for any event which occurs prior to assumption and assignment of the Leases but that is unknown to the counterparties as of the date of assumption and assignment and Purchaser may make a claim under any applicable insurance policy covering one or more Debtors' operations for any such event.

14. BS Property, LLC (the "**Utah Landlord**") is the landlord of that certain real property and common areas located at or near 1346 E. Fort Unions Blvd., Cottonwood Heights, UT 84121 (the "**BS Premises**"). Even Stevens, Utah, LLC was the tenant ("**Utah Debtor**") under that certain *Lease* dated October 31, 2016 ("**Original Lease**").

15. The Original Lease was amended by that certain *First Amendment to Fort Union Lease* dated January 6, 2017 ("**1st Amendment**"), *Second Amendment to Fort Union Lease* dated February 15, 2017 ("**2nd Amendment**"), *Third Amendment to*

*Fort Union Lease* dated March 12, 2018 ("**3rd Amendment**"), *Fourth Amendment to Fort Union Lease* dated August 28, 2018 ("**4th Amendment**"), and the *Fifth Amendment to Fort Union Lease* dated January 1, 2019 ("**5th Amendment**"). The Original Lease as modified by the 1st Amendment, 2nd Amendment, 3rd Amendment, 4th Amendment, and 5th Amendment shall be collectively referred to herein as the "BS Lease Agreement." Notwithstanding anything to the contrary in this Sale Order, the Purchaser shall accept an assumption and assignment of the BS Lease Agreement with the Utah Landlord on the terms and conditions in the Lease Agreement with the following modifications:

- The Purchaser shall pay to Utah Landlord the total amount of $38,000 ("**BS Cure Payment**") twenty-four (24) hours prior to Closing as full and final satisfaction of the Purchaser's cure obligations under 11 U.S.C. § 365;[2] and

- The Lease Agreement shall be amended to reflect that (i) the Purchaser, or its assignee, is the new tenant, and (ii) a new default provision shall be added that provides that if the Purchaser is more than three (3) business days late twice in any 18 month period, then the Utah Landlord is free to exercise its default remedies including, but not limited to, eviction.

16.     Notwithstanding anything in the Asset Purchase Agreement or this Sale Order to the contrary, the Cure Cost for the Lease with Fourth East Properties, LLC is $5,358.76, which will be paid by the Trustee from the proceeds of the Sale Transaction.

17.     Notwithstanding anything in the Asset Purchase Agreement or this Sale Order to the contrary, the Lease with 2214 Washington LLC will be assumed and assigned as amended by the *First Amendment to Lease Agreement* dated June 2021.

18.     The Purchased Contracts will be assumed and assigned to, and remain in full force and effect for the benefit of, the Purchaser or Purchaser's

---

[2] The BS Cure Payment will be paid directly by Purchaser as additional consideration in addition to the Purchase Price,

Case 2:19-bk-03236-DPC     Doc 744     Filed 07/15/21     Entered 07/15/21 15:47:11     Desc
152638702.3     Main Document     Page 12 of 21

designee in accordance with their respective terms, notwithstanding any provision in any such Purchased Contract (including those of the type described in Bankruptcy Code § 365(b)(2)) that prohibits, restricts, or conditions such assignment or transfer. Pursuant to Bankruptcy Code § 365(k), the Debtors and Trustee will be relieved from any further liability with respect to the Purchased Contracts after such assignment and sale to the Purchaser.

19.     All defaults or other obligations of the Debtors under each Purchased Contract arising or accruing prior to the Closing (without giving effect to any acceleration clauses or any default provisions of the kind specified in Bankruptcy Code § 365(b)(2)) are deemed cured and any pecuniary loss arising therefrom deemed compensated, upon payment of the Cure Amount with respect thereto, if any, and the Purchaser will have no liability or obligation arising or accruing in respect of the Purchased Contracts on or prior to the Closing, other than as set forth herein.  The non-Debtor parties to the Purchased Contracts are barred from asserting against the Debtors, the Purchaser, and their respective successors and assigns, any accrued default or unpaid obligation allegedly accruing before the Closing, any pecuniary loss resulting from such default, or any other obligation under the Purchased Contracts incurred prior to the Closing, other than the Cure Amounts and as otherwise set forth herein. Notwithstanding any other provision of the Asset Purchase Agreement or Sale Order, nothing precludes Landlords from seeking to collect from Debtors' insurance policies for any claims against Landlords that arise during the pre-Closing period, if any.

20.     The consideration provided by the Purchaser for the Purchased Assets under the Asset Purchase Agreement, including the assumption of the Assumed Liabilities and payment of the Purchase Price, is fair and reasonable.

21.     The Asset Purchase Agreement and the Sale Transaction will not be avoided under Bankruptcy Code § 363(n), and no party will be entitled to any

Case 2:19-bk-03236-DPC    Doc 744    Filed 07/15/21    Entered 07/15/21 15:47:11    Desc
152638702.3                 Main Document      Page 13 of 21

1  damages or other recovery pursuant to Bankruptcy Code § 363(n) in respect of the
2  Asset Purchase Agreement or the Sale Transaction.

3        22.    The Asset Purchase Agreement and the Sale Transaction are
4  undertaken by the Purchaser in good faith, as that term is used in Bankruptcy Code
5  § 363(m) and, accordingly, the reversal or modification on appeal of the
6  authorization provided herein to consummate the Asset Purchase Agreement and the
7  Sale Transaction will not affect the validity of the sale of the Purchased Assets to the
8  Purchaser or any other aspect of the Sale Transaction, unless this Sale Order is duly
9  stayed pending such appeal. The Purchaser is a good faith purchaser of the
10  Purchased Assets and is entitled to all of the benefits and protections afforded by
11  Bankruptcy Code § 363(m).

12        23.    With the exception of alcohol beverage inventories that are received,
13  possessed sold and served pursuant to the Liquor Licenses, all persons and entities
14  that are in possession of some or all of the Purchased Assets as of the Closing are
15  hereby ordered to surrender possession of such Purchased Assets to the Purchaser as
16  of the Closing.  Possession of each and any such alcohol beverage inventory shall be
17  surrendered to the Purchaser at the earlier of (i) immediately following Closing
18  where allowed by applicable Law; (ii) receipt by the Purchaser of authorization from
19  the pertinent Governmental Body where required by applicable Law, or (iii) receipt
20  by the Purchaser of the pertinent Liquor License Approval.

21        24.    This Sale Order is and will be binding upon and governs acts of all
22  entities including, without limitation, all filing agents, filing officers, title agents, title
23  companies, recorders of mortgages, recorders of fees, registrars of deeds,
24  administrative agencies, governmental departments, secretaries of state, federal,
25  state, and local officials, and all other persons and entities, who may be required by
26  operation of law, the duties of their office, or contract, to accept, file, register or
otherwise record or release any documents or instruments that reflect that the

Case 2:19-bk-03236-DPC    Doc 744    Filed 07/15/21    Entered 07/15/21 15:47:11    Desc
152638702.3    Main Document    Page 14 of 21

Purchaser is the assignee and owner of the Purchased Assets free and clear of all Liens, claims, encumbrances and interests, other than Liens specifically assumed by Purchaser under the Asset Purchase Agreement, or as otherwise provided in this Sale Order (all such entities being referred to as "**Recording Officers**"). All Recording Officers are authorized and specifically directed to strike recorded claims, Liens and interests against the Purchased Assets recorded prior to the date of this Sale Order, other than Liens specifically assumed by Purchaser under the Asset Purchase Agreement.

25. No bulk sales law or any similar law of any state or other jurisdiction shall apply in any way to the transactions authorized herein, including the Asset Purchase Agreement and the Sale Transaction.

26. To the extent any Liquor License or other license, registration, qualification or permit necessary for the operation of the Business is not an assumable and assignable executory contract, Purchaser will make reasonable efforts to apply for and obtain such Liquor License or other license, registration, qualification or permit promptly after the Closing Date, and the Debtors (by and through the Trustee) will cooperate reasonably with Purchaser in those efforts at Purchaser's expense in accordance with the terms of the Asset Purchase Agreement. Each existing Liquor License or other license, registration, qualification or permit applicable to the Business, including but not limited to each of the Liquor Licenses identified on Schedule 1.1(i) of the Asset Purchase Agreement, will remain in place for Purchaser's benefit until either (i) an equivalent new Liquor License or other license, registration, qualification or permit is obtained, or (ii) the required Liquor License Approvals are secured, or the existing Liquor License or other license, registration, qualification or permit is transferred in accordance with applicable administrative procedures and all costs relating to such shall be borne solely by the Purchaser in addition to the Purchase Price.

1      27.    Specifically, with regard to the sale of alcohol beverages and food at any

2   of the restaurant business properties encompassed by the Purchased Assets, the

3   Court hereby orders that the Debtors, the Trustee, and all other parties-in-interest

4   will cooperate with and support the Purchaser in executing such applications and

5   furnishing such documents as are necessary for the Purchaser to obtain, in its name,

6   any such temporary new alcohol beverage license, Liquor License Approvals,

7   transferred Liquor License, and/or other licenses, registrations, qualifications, and

8   permits necessary to continue operation of the Business without interruption.

9   Moreover, except for good cause based on any alleged violations of Law (other than

10  alleged violations based on the transfer of ownership of the Business occurring

11  pursuant to the Asset Purchase Agreement and this Sale Order) each of the state or

12  municipal government agencies regulating restaurants and the sale of food and

13  alcoholic beverages at restaurants shall not interrupt the Business conducted at any of

14  the Acquired Restaurants, including the sale of alcoholic beverages and food by the

15  Purchaser either on its own behalf, or on behalf of one or more of the Debtors

16  pursuant to a duly executed management agreement, without first obtaining relief

17  from this Court. The Purchaser may continue to operate at each of the Acquired

18  Restaurants under existing Liquor Licenses, state food service licenses, local

19  occupational licenses, and any other licenses, registrations, qualifications or permits

20  needed to operate at any of those restaurant business properties, with no interruption

21  of the business conducted at any such premises, until the Liquor License Approvals

22  have been secured and other licenses, registrations, qualifications and permits have

23  been transferred to the Purchaser, or new alcohol beverage licenses and other

24  licenses, registrations, qualifications and permits have been issued to the Purchaser.

25      28.    The terms and provisions of the Asset Purchase Agreement, the other

26  ancillary agreements, and this Sale Order is binding in all respects upon, and will

inure to the benefit of, the Debtors, the Trustee, the Purchaser, and their respective

1  affiliates, successors and assigns, and any affected third parties, notwithstanding the
2  dismissal of any of the Debtors' cases. The Asset Purchase Agreement, the Sale
3  Transaction, and this Sale Order are binding upon, and shall not be subject to
4  rejection or avoidance.

5       29.    The Asset Purchase Agreement and any related agreements,
6  documents, or other instruments may be amended by the parties in a writing signed
7  by such parties without further order of the Court, provided that any such
8  amendment does not have a material adverse effect on the Debtors or the Debtors'
9  estates.

10      30.    The failure to include specifically any particular provision of the Asset
11 Purchase Agreement in this Sale Order does not diminish or impair the effectiveness
12 of such provision, it being the intent of the Court that the Asset Purchase Agreement
13 be authorized and approved in its entirety.

14      31.    To the extent of any inconsistency between the provisions of this Sale
15 Order, the Asset Purchase Agreement, and any documents executed in connection
16 therewith, the provisions contained in the Sale Order, the Asset Purchase
17 Agreement, and any documents executed in connection therewith will govern, in
18 that order.

19      32.    To the extent the Schedules to the Asset Purchase Agreement are
20 updated in accordance therewith (with the approval of the Purchaser), the Trustee
21 will file updated Schedules to the Asset Purchase Agreement (as such Schedules may
22 be approved by the Purchaser) as soon as practicable, but in no event later than five
23 Business Days following the Closing Date.

24      33.    The provisions of this Sale Order authorizing the sale and assignment of
25 the Purchased Assets free and clear of all Liens, claims, encumbrances and interests,
26 other than Liens specifically assumed by Purchaser under the Asset Purchase
   Agreement and Permitted Exceptions, will be self-executing, and notwithstanding

Case 2:19-bk-03236-DPC    Doc 744    Filed 07/15/21    Entered 07/15/21 15:47:11    Desc
152638702.3                    Main Document        Page 17 of 21

1   the failure of the Debtors, the Purchaser, or any other party to execute, file or obtain

2   releases, termination statements, assignments, consents or other instruments to

3   effectuate, consummate and/or implement the provisions hereof, all Liens, claims,

4   encumbrances, and other interests on or against such Purchased Assets (other than

5   Liens specifically assumed by Purchaser under the Asset Purchase Agreement), if

6   any, shall be deemed released, discharged and terminated.

7         34.   Notwithstanding the provisions of Bankruptcy Rules 6004(h), 6006(d)

8   or 7062, this Sale Order is effective and enforceable immediately and is not stayed.

9         35.   This Court retains exclusive jurisdiction to resolve any controversy or

10   claim arising out of or related to this Sale Order, the Asset Purchase Agreement, or

11   any other related agreements, including without limitation: (a) any actual or alleged

12   breach or violation of this Sale Order, the Asset Purchase Agreement, or any related

13   agreements, (b) the enforcement of any relief granted in this Sale Order, or (c) as

14   otherwise set forth in the Asset Purchase Agreement.

15                **\*DATED AND SIGNED AS INDICATED ABOVE\***

16

17

18

19

20

21

22

23

24

25

26

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

# EXHIBIT A

**(Cure Schedule)**

**Even Stevens Acquisition Partners, LLC - Cure Schedule**

| Counterparty | Agreement / Acct. No. | Cure Amount |
|---|---|---|
| DoorDash - Delivery | 44113 | $0.00 |
| UberEats - Delivery | | $0.00 |
| Toast - POS System | 001929C1650;<br>001929C1653;<br>001929C1652;<br>001929C1656;<br>001929C1655;<br>001929C1654;<br>001929C1658 | $0.00 |
| R365 - Accounting System | | $0.00 |
| Sysco Intermountain | 005-974782;<br>005-974776;<br>005-974781;<br>005-974780;<br>005-974779;<br>005-974778;<br>005-974784 | $0.00 |
| Aramark | 860099689;<br>240001486 | $0.00 |
| Liberty Mutual/Ohio Security Insurance | BZS58227038;<br>BAS58227038 | $0.00 |
| SelectHealth | G1023723 | $0.00 |
| Ameritas | 010-052525 | $0.00 |
| Workers Compensation Fund | 3350485;<br>4002714 | $0.00 |
| Fourth East Properties, LLC | Real property lease:<br><br>414 E 200 S<br>Salt Lake City, UT 84111 | $5,358.76 |
| Petty Motor Company | Real property lease:<br><br>2030 S 900 E<br>Salt Lake City, UT 84105 | $0.00 |
| Wasatech Commercial Management | Real property lease:<br><br>541 E 12300 S<br>Draper, UT 84020 | $0.00 |

Case 2:19-bk-03236-DPC    Doc 744    Filed 07/15/21    Entered 07/15/21 15:47:11    Desc
152638702.3
Main Document    Page 20 of 21

| Counterparty | Agreement / Acct. No. | Cure Amount |
|---|---|---|
| 2214 Washington LLC | Real property lease (as amended by the *First Amendment to Lease Agreement* dated June 2021):<br><br>2214 Washington Blvd<br>Ogden, UT 84401 | $0.00 |
| RBF Properties | Real property lease:<br><br>131 Main St<br>Logan, UT 84321 | $0.00 |
| Bannock Block 44, LLC | Real property lease:<br><br>815 W Bannock St<br>Boise, ID 83702 | $0.00 |
| BS Property, LLC | Real property lease:<br><br>1346 E Fort Union Blvd<br>Cottonwood Heights, UT 84121 | $38,000.00 |

Case 2:19-bk-03236-DPC    Doc 744    Filed 07/15/21    Entered 07/15/21 15:47:11    Desc
152638702.3
Main Document    Page 21 of 21