1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

**Guttilla Murphy Anderson**
Ryan W. Anderson (Ariz. No. 020974)
5415 E. High St., Suite 200
Phoenix, Arizona 85054
Email: randerson@gamlaw.com
Phone: (480) 304-8300
Fax: (480) 304-8301

Attorneys for Dina L. Anderson, Chapter 7 Trustee

UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| In Re: | Chapter 7 |
| Even Stevens Sandwiches, LLC, et al., | Case No. 2:19-bk-03236-DPC |
| Debtor. | **MOTION FOR APPROVAL OF AMENDMENT TO ASSET PURCHASE AGREEMENT** |

Dina L. Anderson, the Chapter 7 Trustee assigned in the above-captioned case seeks approval of an amendment to an asset purchase agreement previously approved by this Court.

As set forth below, the Trustee has already received $1,050,000 (~33%) of the amended purchase price from Purchaser, however it is taking longer than expected for Purchaser to obtain financing for the balance of the purchase price. The Trustee and the Purchaser have reached an agreement, reflected in the *Seventh Amendment to Asset Purchase Agreement* attached to this Motion as **Exhibit "1"** ("**Seventh Amendment**"), which allows Purchaser additional time to pay the remaining balance of the purchase price in exchange for providing material additional consideration to the Chapter 7 Bankruptcy estate.

Guttilla Murphy Anderson, P.C.
5415 E. High Street, Suite 200
Phoenix, AZ 85054
(480) 304-8300

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.     TRANSACTION BACKGROUND

1.     On July 15, 2021, the Court entered the Order: *(1) Authorizing the Sale of Property Free and Clear of All Liens, Claims, Encumbrances, and Other Interest; (2) Approving Assumption, Assignment, and Sale of Certain Executory Contracts and Unexpired Leases; and (3) Granting Related Relief* ("**Sale Order**") [Doc 744] approving sale of substantially all of the Debtor's assets to Purchaser under terms of the Asset Purchase Agreement.[1] Since entry of the Sale Order, the Trustee has continued to supervise operations of the Debtor's seven restaurant locations (which continue to operate profitably).

2.     At the time the Sale Order was entered, the Purchase Price was $2,800,000, the Purchaser had funded a Deposit of $84,000, and the bankruptcy estate was entitled to retain 25% of Net Cash on Hand upon the closing of the sale.

3.     Following entry of the Sale Order, Purchaser's financing fell through and Purchaser experienced delays obtaining alternative financing. In exchange for extending the closing date, the Trustee required Purchaser to continue to make deposits to the bankruptcy Estate and the Purchaser has already paid the bankruptcy estate over $1 million of the purchase price. Additionally, through negotiations, the Trustee and Purchaser materially increased the purchase price, and provided the bankruptcy estate with other material enhancements to the Asset Purchase Agreement. Specifically, through six prior amendments to the Asset Purchase Agreement, Purchaser has already:

---

[1] Capitalized Terms not otherwise defined in this notice retain the definition given to them in the Sale Order.

Guttilla Murphy Anderson, P.C.
5415 E. High Street, Suite 200
Phoenix, AZ 85054
(480) 304-8300

Gutilla Murphy Anderson, P.C.
5415 E. High Street, Suite 200
Phoenix, AZ 85054
(480) 304-8300

i.   Made $450,000 of installment payments on account of the Purchase Price;

ii.  Funded $516,000 of additional Deposits (thus increasing the Deposit balance from $84,000 to $600,000);

iii. Increased the Purchase Price from $2,800,000 to $3,000,000; and

iv.  Reduced its share of Net Cash on Hand as a Purchased Asset from 75% to 25% (estimated to provide the estate with approximately $212,660 of additional cash as an Excluded Asset).[2]

4.      Accordingly, since entry of the Sale Order, the bankruptcy estate has received substantial payments from Purchaser on account of the Purchase Price (more than $1 million) and the economics of the transaction have materially improved for the benefit of the bankruptcy estate.  Although Purchaser has already paid more than one third of the Purchase Price, Purchaser has requested additional time to secure financing to pay the balance of the Purchase Price.  To that end, the Trustee and Purchaser have reached an agreement to amend the Asset Purchase Agreement through the Seventh Amendment.

## II.      SUMMARY OF SEVENTH AMENDMENT

5.      To effectuate closing of the sale and facilitate Purchaser's efforts to secure financing, the Trustee and Purchaser have entered into the Seventh Amendment, as briefly summarized in the table below.  In short, the Seventh Amendment provides Purchaser up to twelve (12) months to pay the remaining balance of Purchase Price in exchange for additional consideration and security.

6.      Importantly, the Trustee believes that despite the recovery of more than

---

[2]  The Trustee and Purchaser estimate that the Net Cash on Hand at closing will be $425,320 (subject to potential post-closing adjustments).  The difference between 25% and 75% of $425,320 is $212,660.  This is an estimate and the actual additional value may change based on any post-closing adjustments to the final cash-on-hand figure.

3

$1 million of payments and deposits already received from Purchaser, there will be no meaningful recovery (if any) for general unsecured creditors without the amendments reflected in the Seventh Amendment, as the Purchaser will be unable to close the sale.

7.    Below is a table which summarizes the changes in the Seventh Amendment. To the extent of any inconsistency between this table and the Seventh Amendment, the terms of the Seventh Amendment govern:

| Amended Term | Changes in Seventh Amendment |
|---|---|
| Closing Date | Deemed to have occurred on February 15, 2022 (Seventh Amendment ¶ 1) |
| Net Cash on Hand | Estate's interest in Net Cash on Hand increases from 75% to 100%. The estimated economic impact of this change is an additional $106,330[3] (Seventh Amendment ¶ 2) |
| Application of Payments | Trustee is authorized to immediately apply the $600,000 of Deposits, the $450,000 in prior Purchase Price payments, and all future payments received from Purchaser against the Purchase Price and use such funds in accordance with the priority scheme of the Bankruptcy Code (Seventh Amendment ¶ 9(b)) |

[Table continues on next page]

---

[3] The Trustee and Purchaser estimate that the Net Cash on Hand at closing will be $425,320 (subject to potential post-closing adjustments). The additional 25% of $425,320 is $106,330. This is an estimate and the actual additional value may change based on any post-closing adjustments to the final cash-on-hand figure.

4

Guttilla Murphy Anderson, P.C.
5415 E. High Street, Suite 200
Phoenix, AZ 85054
(480) 304-8300

Guttilla Murphy Anderson, P.C.
5415 E. High Street, Suite 200
Phoenix, AZ 85054
(480) 304-8300

| Amended Term | Changes in Seventh Amendment |
|---|---|
| Secured Note | To secure Purchaser's obligations to pay the balance of the Purchase Price and other obligations, Purchaser will provide Trustee (as seller) a promissory note in the amount of $1,950,000 secured by substantially all of Purchaser's assets (which include all of the Purchased Assets under the Asset Purchase Agreement). Material terms of the Secured Note include:<br><br>• Maturity: April 1, 2023<br>• Payments: Interest only, balloon payment due on maturity<br>• Interest: 12.0%; Default Interest: 20%<br>• Customary remedies for default, including acceleration<br><br>(Seventh Amendment ¶ 4) |
| Personal Guaranty | The Secured Note will be personally guaranteed by Brooks Pickering (Purchaser's principal) (Seventh Amendment ¶ 4) |
| Note Monitoring Fee | Purchaser must pay the Trustee a Note Monitoring Fee of $3,000 per month. (Seventh Amendment ¶ 4) |
| Post-Closing Assistance | Purchaser will cause the 2021 tax returns for the Debtors to be prepared and completed and will cause an application for the Employee Retention Tax Credit to be completed and submitted for the benefit of the estates. |

## III.   BASIS FOR RELIEF[4]

8.      Section 16.4 of the Asset Purchase Agreement, entitled "Modification," explicitly provides that the Asset Purchase Agreement "may be modified, amended or

---

[4] This Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. § 157 and 1334. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b). The venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory bases for relief requested in this motion are Bankruptcy Code §§ 105 and 363.

Case 2:19-bk-03236-DPC    Doc 832   Filed 04/08/22   Entered 04/08/22 13:58:36    Desc
Main Document    Page 5 of 22

Guttilla Murphy Anderson, P.C.
5415 E. High Street, Suite 200
Phoenix, AZ 85054
(480) 304-8300

supplemented only by a written instrument duly executed by all of the Parties hereto which expressly indicates the intention to modify, amend or supplement this Agreement." Further, Paragraph 29 of the Sale Order provides that the "Asset Purchase Agreement and any related agreements, documents, or other instruments may be amended by the parties in a writing signed by such parties without further order of the Court, provided that any such amendment does not have a material adverse effect on the Debtors or the Debtors' estates."

9.      Accordingly, the Trustee submits that, because the Court has already approved the Asset Purchase Agreement, and because the amendments under the Seventh Amendment have a material *positive* effect on the estates (as opposed to an adverse effect), the Trustee and Purchaser may enter the Seventh Amendment without notice or further Court approval. Nonetheless, out of an abundance of caution, the Trustee now seeks approval from the Court to enter into the Seventh Amendment.

10.      The Court has already found that Trustee demonstrated "good, sufficient, and sound business purposes and justifications for the sale to the Purchase under Bankruptcy Code § 363(b)."[5] Bankruptcy Code § 105(a) provides that a bankruptcy court "may issue any order, process or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]."[6] Finally, under Paragraph 35 of the Sale Order and Section 16.14 of the Asset Purchase Agreement, this Court retained jurisdiction over matters relating to the Asset

---

[5]  Sale Order ¶ F.  To the extent applicable, and by this reference, the Trustee incorporates the Motion for Approval of Sale of Business Fee and Clear of Liens and Encumbrances, Pursuant to 11 U.S.C. § 363; and Motion for Assumption and Assignment of Executory Contracts and Commercial Real Property Leases [Doc 716] and arguments therein.
[6]  11 U.S.C. § 105(a).

Gutilla Murphy Anderson, P.C.
5415 E. High Street, Suite 200
Phoenix, AZ 85054
(480) 304-8300

1  Purchase Agreement.

2      11.    The Trustee has worked tirelessly and in good faith with Purchaser and believes

3  the changes reflected in the Seventh Amendment are in the best interest of the bankruptcy

4  estate for several reasons.  First, the changes provide the bankruptcy estate with material

5  additional consideration comprising: (i) up to $234,000 in interest payments; (ii) up to

6  $36,000 in Note Monitoring Fees; (iii) an estimated additional $106,330 in Net Cash on Hand

7  as an Excluded Assets; (iv) a security interest in all assets of Purchaser's assets; and (v) a

8  personal guaranty.  Second, given the estimated chapter 11 and secured claims of $1,486,432,

9  the Trustee does not believe there will be any meaningful recovery for general unsecured

10  creditors unless the bankruptcy estate receives payment of the balance of the purchase price

11  from Purchaser.  Simply put, closing the Debtor's operations and liquidating the Debtor's

12  remaining equipment and assets will allow the Chapter 7 Trustee to pay <u>only</u> the estimated

13  administrative and secured claims.  Therefore, electing to retain the funds collected and

14  liquidating the Debtor's operations, will result in no meaningful distribution for the unsecured

15  creditors of the Debtors estate.  Third, terminating the Asset Purchase Agreement now might

16  trigger substantial lease rejection claims, which could have a material negative affect on

17  creditor recoveries[7] and liquidating the Debtor's operations needlessly cause employees of

18  the Debtor to lose their jobs.

19      12.    Meanwhile, with assistance from Purchaser, the Trustee has continued to

20  operate the Debtor's stores since entry the Sale Order at a profit and remained current on all

21

22

---

[7] The Sale Order.

7

Guttilla Murphy Anderson, P.C.
5415 E. High Street, Suite 200
Phoenix, AZ 85054
(480) 304-8300

1  lease obligations.  Given Purchaser's good faith efforts and substantial payments under the

2  Asset Purchase Agreement, the Trustee believes terms under the Seventh Amendment are

3  fair, reasonable, and equitable.

4       13.    Accordingly, the Trustee believes a sound business purpose supports entry into

5  the Seventh Amendment and that failure to approve this requested relief would prevent the

6  sale form closing, which would cause irreparable harm to the estates.

7                              **IV.    CONCLUSION**

8       For the reasons set forth above, the Trustee contends that the entry into the Seventh

9  Amendment is necessary, appropriate, and in the best interest of the estate.  The Trustee

10  respectfully requests that the Court enter an order approving the Seventh Amendment and

11  provide any further relief the Court deems just.

12       **WHEREFORE**, the Trustee respectfully requests an Order of this Court approving

13  the Seventh Amendment attached hereto as Exhibit "1" between the Trustee and Even Stevens

14  Acquisition Partners, LLC utilizing a "negative notice" procedure in which interested parties

15  and all creditors shall have a twenty-one (21) day period to file objections.

16       Dated this 8th day of April 2022.

17                    GUTTILLA MURPHY ANDERSON, P.C.

18                    */s/ Ryan W. Anderson*
                      Ryan W. Anderson
19                    Attorneys for the Trustee

20

21

22

Gutilla Murphy Anderson, P.C.
5415 E. High Street, Suite 200
Phoenix, AZ 85054
(480) 304-8300

**E-FILED** on April 8, 2022 with the U.S. Bankruptcy Court

**COPIES** served by ECF to all registered users for this case AND by (i) US mail or emailed, if an email address is shown, and (ii) by fax, where a fax number is included.

## SERVICE LIST

| | |
|---|---|
| Dina L. Anderson<br>21001 N. Tatum Blvd., #1630-608<br>Phoenix, AZ 85050<br>danderson@dlatrustee.com<br>*Chapter 7 Trustee* | Jennifer A. Giaimo<br>Office of The U.S. Trustee<br>230 N. First Ave., #204<br>Phoenix, AZ 85003-1706<br>Jennifer.A.Giaimo@usdoj.gov |
| Bradley A. Cosman<br>Benjamin C. Calleros<br>Perkins Coie LLP<br>2901 N. Central Ave. Suite 2000<br>Phoenix, AZ 85012<br>BCosman@perkinscoie.com<br>BCalleros@perkinscoie.com<br>*Counsel for Even Stevens Acquisition Partners, LLC* | Even Stevens Sandwiches, LLC<br>2030 S. 900 E. Suite A<br>Salt Lake City, UT 84105-3280<br>*Debtor* |
| Harold Campbell<br>HAROLD E. CAMPBELL, P.C.<br>910 W McDowell Road<br>Phoenix, AZ 85007<br>heciii@haroldcampbell.com<br>*Counsel for Take 2, LLC and John Quinn* | Internal Revenue Service<br>Bankruptcy and Collection Enforcement<br>P.O. Box 7346<br>Philadelphia PA 19101-7346 |
| John R. Clemency<br>Janel M. Glynn<br>Mike Mazzella<br>POLSINELLI P.C.<br>One E. Washington, Suite 1200<br>Phoenix, AZ 85004<br>jclemency@polsinelli.com<br>jglynn@polsinelli.com<br>mmazzella@polsinelli.com<br>*Counsel for Examiner Lynton Kotzin* | James L. Ugalde<br>QUARLES & BRADY LLP<br>Renaissance One<br>Two North Central Ave.<br>Phoenix, Arizona 85004-2391<br>james.ugalde@quarles.com<br>*Attorneys for CBDG Grant Road Car Wash, LLC* |

| | |
|---|---|
| Scott B. Cohen | Thomas H. Allen |
| Michael P. Rolland | Cody D. Vandewerker |
| ENGELMAN BERGER, P.C. | ALLEN BARNES & JONES, PLC |
| 2800 N. Central Avenue Suite 1200 | 1850 N. Central Ave., Ste. 1150 |
| Phoenix, AZ 85004 | Phoenix, AZ 85004 |
| sbc@eblawyers.com | tallen@allenbarneslaw.com |
| mpr@eblawyers.com | cvandewerker@allenbarneslaw.com |
| *Counsel for BS Property, LLC* | *Attorneys for Skyline JSY, LLC* |
| | |
| Christopher J. Dylla | Kasey C. Nye |
| Office of the Arizona Attorney General | WATERFALL ECONOMIDIS |
| 2005 N Central Ave | CALDWELL HANSHAW & |
| Phoenix, AZ 85004-1592 | VILLAMANA, P.C. |
| christopher.dylla@azag.gov | 5120 E. Williams Cir., Ste. 800 |
| Counsel for *Attorney for the State of* | Tucson, AZ 85711 |
| *Arizona ex rel. Arizona Department of* | knye@waterfallattorneys.com |
| *Revenue* | *Attorneys for Ally Financial* |
| | |
| Arizona Department of Revenue | Alan C. Hochheiser |
| Attention Bk Payment Unit | Maurice Wutscher LLP |
| 2005 North Central Avenue | 23611 Chagrin Blvd., Suite 207 |
| Phoenix, AZ 85004 | Beachwood, OH 44122 |
| | ahochheiser@mauricewutscher.com |
| | *Attorney for AmTrust North America, Inc.* |
| | *on behalf of AmTrust Insurance Company* |
| | *of Kansas, Inc.* |
| | |
| Pernell W. McGuire | James B. Ball |
| M. Preston Gardner | Ball, Santin & McLeran, PLC |
| DAVIS MILES MCGUIRE | 2999 N. 44th Street, Suite 500 |
| GARDNER, PLLC | Phoenix, Arizona 85018 |
| 40 E. Rio Salado Parkway, Suite 425 | ball@bsmplc.com |
| Tempe, AZ 85281 | *Attorney for Santander Consumer USA* |
| pmcguire@davismiles.com | *Inc. dba Chrysler Capital as servicer for* |
| pgardner@davismiles.com | *CCAP Auto Lease Ltd. and Santander* |
| | *Consumer USA Inc. dba Chrysler Capital* |
| | *as servicer for CCAP Auto Lease Ltd.* |

Guttilla Murphy Anderson, P.C.
5415 E. High Street, Suite 200
Phoenix, AZ 85054
(480) 304-8300

Janel M. Glynn
THE BURGESS LAW GROUP
3131 East Camelback Road, Suite 224
Phoenix, AZ 85016
janel@theburgesslawgroup.com
*Counsel for Lynton Lotzin*

Patrick A. Clisham
Michael P. Rolland
ENGELMAN BERGER P.C.
3636 N. Central Ave., Ste. 700
Phoenix, AZ 85012
pac@eblawyers.com
mpr@eblawyers.com
*Attorneys for USBC Real Estate, LLC*

Amber K. Kauffman
Idaho Office Of The Attorney General
PO BOX 36
Boise, ID 83722
Fax: 208-364-7387
*Counsel for Idaho State Tax Commission*

George U. Winney
GAMMAGE & BURNHAM
Two N. Central Ave., 15th Floor
Phoenix, AZ 85004
gwinney@gblaw.com
*Attorneys for 40th Street Developers, LLC
and E. N. Richmond Trust*

Benjamin William Reeves
Emily Gildar Wagner
SNELL & WILMER LLP
One Arizona Center
400 E Van Buren St
Phoenix, AZ 85004-2202
breeves@swlaw.com
ewagner@swlaw.com
*Counsel for Official Committee of
Unsecured Creditors*

Susan M. Freeman
Nicholas Bauman
LEWIS ROCA ROTHGERBER
CHRISTIE LLP
201 E. Washington St., Ste. 1200
Phoenix, AZ 85004
sfreeman@lrrc.com
nbauman@lrrc.com
*Attorneys for University Village Limited
Partnership*

Jason Sherman
JANEWAY LAW FIRM LLC
3636 N. Central Ave., Ste. 400
Phoenix, AZ 85012-2582
jsherman@janewaylaw.com
Counsel for Citizens Bank

Dina L. Yunker
Assistant Attorney General
Bankruptcy & Collections Unit
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
Fax: (206) 587-5150
*Attorneys for the State of Washington*

Guttilla Murphy Anderson, P.C.
5415 E. High Street, Suite 200
Phoenix, AZ 85054
(480) 304-8300

11

Guttilla Murphy Anderson, P.C.
5415 E. High Street, Suite 200
Phoenix, AZ 85054
(480) 304-8300

1

Brian N. Spector
SCHNEIDER & ONOFRY, P.C.
365 E. Coronado Road
Phoenix, AZ 85004
bspector@soarizonalaw.com
*Counsel for John Paul Blakely*

2

3

Kathryn Ore
PIMA COUNTY ATTORNEY'S
OFFICE, CIVIL DIVISION
32 N. Stone Ave., Ste. 2100
Tucson, Arizona 85701
kathryn.ore@pcao.pima.gov
pcaocvbk@pcao.pima.gov
*Attorneys for Pima County*

4

5

Michael Scott Steck
STECK LAW PLLC DBA CLARIOR
LAW
1173 South 250 West #206
St. George, UT 84770
Michael@clariorlaw.com
*Counsel for Steven Down*

6

7

8

Weltman, Weinbert & Reis
3705 Marlane Drive
Grove City, OH 43123
AZNotices@logs.com
*Attorneys for Citizens Bank, N.A.*

9

Bannock Block 44, LLC
c/o Baum Development LLC
1030 W. Chicago Ave., Suite 300
Chicago, IL 60642
*Landlord Store No. 1*

10

11

Neuman C. Petty, Manager
Nupetco Associates, LLC
2001 Windsor Street
Salt Lake City, UT 84105
*Store No. 5*

12

Watermark Property Management, LLC
1030 W. Chicago Ave., Suite 300
Chicago, IL 60642
*Store No. 1*

13

14

Wayne G. Petty
Prince, Yeates & Geldzahler
15 West South Temple #1700
Salt Lake City, UT 84101
*Store No. 5*

15

RBF Properties, LLC
Attn: Mark Fjeldsted
129 North Main Street
Logan, UT 84321
*Landlord Store No. 2*

16

17

BS Property, LLC
Attn: Russ Taylor
1535 Wasatch Drive
Salt Lake City, UT 84108
*Landlord Store No. 6*

18

19

2214 Washington, LLC
2444 Washington Blvd.
Ogden, UT 84401
*Landlord Store No. 3*

20

BS Property, LLC
Attn: Rocky Taylor
2015 Laird Drive
Salt Lake City, UT 84108
*Landlord Store No. 6*

21

22

12

Fourth East Properties, LLC
1831 S. Connor St.
Salt Lake City, UT 84108
*Landlord Store No. 4*

BS Property, LLC
c/o Scott B. Cohen
Engelman Berger, P.C.
3636 N. Central Ave., Ste. 700
Phoenix, AZ 85012
sbc@eblawyers.com
*Landlord Store No. 6*

DRMH, LLC
PO Box 65727
Salt Lake City, UT 84165
*Landlord Store No. 5*

Day Dairy Village Shoppes
Holdings, LLC
595 South Riverwoods Pkwy
Logan, UT 84321
*Landlord Store No. 7*

*/s/ Louis A Lofredo*

3081-001 (465884)

Guttilla Murphy Anderson, P.C.
5415 E. High Street, Suite 200
Phoenix, AZ 85054
(480) 304-8300

# EXHIBIT "1"

## Seventh Amendment to Asset Purchase Agreement

Gutilla Murphy Anderson, P.C.
5415 E. High Street, Suite 200
Phoenix, AZ 85054
(480) 304-8300

## SEVENTH AMENDMENT TO ASSET PURCHASE AGREEMENT

This *Seventh Amendment* ("**Amendment**") to the *Asset Purchase Agreement* dated June 1, 2021 (as amended, "**Purchase Agreement**") by and among Even Stevens Sandwiches, LLC, Even Stevens Utah, LLC, and Even Stevens Idaho, LLC (collectively, "**Sellers**") by and through Dina L. Anderson as chapter 7 trustee for the Sellers under jointly administered Case No. 19-bk-03236-DPC (Bankr. D. Ariz.), and Even Stevens acquisition Partners, LLC, a Utah limited liability company ("**Purchaser**") is dated April 4, 2022.

Sellers and Purchaser acknowledge that:

A.     The Purchase Agreement was amended by the *Notice of Amendments to Asset Purchase Agreement* ("**First Notice**") [Doc 759] dated July 28, 2021; the *Second Notice of Amendments to Asset Purchase Agreement* ("**Second Notice**") [Doc 784] dated August 31, 2021; the *Third Notice of Amendments to Asset Purchase Agreement* ("**Third Notice**") [Doc 799] dated October 1, 2021; the *Final Notice of Amendments to Asset Purchase Agreement* ("**Fourth Notice**") [Doc 803] dated October 15, 2021; the *Fifth Amendment to Asset Purchase Agreement* dated October 26, 2021 ("**Fifth Amendment**"); and the *Sixth Amendment to Asset Purchase Agreement* dated January 7, 2022 ("**Sixth Amendment**") [Doc 817]. Unless otherwise defined in this Amendment, all capitalized terms retain the definitions given to them in the Purchase Agreement.

B.     Under the Sixth Amendment, the Purchase Price was increased from $2,800,000 to $3,000,000, and the Sellers were entitled to retain the greater of $266,978.40 or 75% of Net Cash on Hand as an Excluded Asset.

C.     As of this Seventh Amendment, Purchaser has funded, and Sellers are holding, $600,000 in Deposits under the Purchase Agreement ("**Funded Deposits**"). In addition to the Funded Deposits, Purchaser has made payments to Sellers totaling $450,000 ("**Purchase Price Paydowns**") which were credited against the Purchase Price.

Purchaser and Sellers agree that in exchange for further extending the Outside Closing Date and modifying other terms of the Purchase Agreement, Purchaser will provide additional consideration set forth below.

NOW, THEREFORE, for good and valuable consideration, the receipt and adequacy of which Sellers and Purchaser acknowledge, Sellers and Purchaser agree as follows:

1.     <u>Closing Date</u>. The Parties agree that under Section 3.1 of the Purchase Agreement, the Closing is deemed to have occurred on February 15, 2022 ("**Closing Date**"), and conditions precedent to Closing contained in Section 4 of the Purchase Agreement that were not satisfied as of the Closing Date are deemed waived.

2.     <u>Net Cash on Hand Adjustment & Transfer</u>. Section 1.2(b) of the Purchase Agreement is amended to provide that Excluded Assets includes 100% (rather than 75%) of Net Cash on Hand as of the Closing Date. The Parties estimate the Net Cash on Hand as of

156144217.2

the Closing Date will be $425,320 (subject to potential adjustment under Section 2.3(d) of the Purchase Agreement). Purchaser will transfer the Net Cash on Hand to Sellers according to the following schedule: (i) $266,978 no later than one Business Day after the Amendment Effective Date; (ii) $52,012 no later than 10 Business Days after the Amendment Effective Date (defined below); and (iii) $106,330 (subject to any adjustment under Section 2.3(d) of the Purchase Agreement) no later than 30 days after entry the Amendment Effective Date.

3.     Application of Deposit. On the Effective Date, the Funded Deposits will be deemed credited and applied toward the Purchase Price.

4.     Secured Note. As of the Effective Date, the unpaid balance of the Purchase Price is $1,950,000 ("**Purchase Price Balance**") after accounting for the Purchase Price Paydowns and after applying the Funded Deposits. On the Effective Date, Purchaser will issue to Sellers the secured term note ("**Secured Note**") attached to this Seventh Amendment as **Exhibit A** in the face amount of the Purchase Price Balance. The Secured Note will mature on April 1, 2023, bear interest at 12.0%, with interest-only payments due on the first Business Day of each month beginning with the first full month after entry of the Effective Date. The Secured Note will be secured by substantially all of the assets of Purchaser. The Secured Note will be personally guaranteed by Brooks Pickering and his wife.

In addition to the interest obligations under the Secured Note, Purchaser will pay Sellers a monthly fee ("**Note Monitoring Fee**") of $3,000 per month until the Secured Note is paid in full. The Note Monitoring Fee will be due and owing on the first Business Day of each month beginning with the first full month after entry of the Effective Date

5.     Effective Date. This Seventh Amendment is not effective unless and until the date the Bankruptcy Court enters an order approving this Seventh Amendment ("**Effective Date**").

6.     Sellers' Deliveries. On the Effective Date, Sellers will, to or for the benefit of Purchaser, make the deliveries set forth in Section 3.2 of the Purchase Agreement.

7.     Purchasers' Deliveries. On the Effective Date, Purchaser will deliver such other documents, funds or other things reasonably requested by Sellers or contemplated by the Purchase Agreement to be delivered by Purchaser, including the deliveries set forth in Sections 3(c), 3(d), and 3(e) of the Purchase Agreement. Unless otherwise directed by the Sellers, Purchaser will cause all of Sellers' debtor-in-possession bank accounts to be closed no later than 30 days after the Effective Date.

8.     Tax Return & Tax Credits. Purchaser will cause the 2021 Tax Returns for the Sellers to be prepared and completed. Purchaser will also cause an application for the Employee Retention Tax Credit to be completed and submitted on behalf of Sellers. For the avoidance of any doubt, any Employee Retention Tax Credit will be an Excluded Asset belonging to Sellers. Consistent with Section 15.2 of the Purchase Agreement, Purchaser will cooperate with Sellers' efforts to complete all future tax returns.

156144217.2

9.   Post-Closing Matters.

        a.   Unless otherwise directed by the Sellers, Purchaser will cause all of Sellers' debtor-in-possession bank accounts to be closed no later than 30 days after the Effective Date.

        b.   From and after Closing, Purchaser releases any claim, right, or interest in or to the Purchase Price Paydowns or Funded Deposits. Further, From and after Closing, all payments from Purchaser to Sellers—including the Purchase Price Paydowns, the Funded Deposits, any payments under the Secured Note, and any Note Monitoring Fees—are unrestricted funds and Sellers are authorized to use such funds in accordance with the Bankruptcy Code and any applicable rules or regulations to pay allowed claims in the Chapter 7 Cases. Without in any way limiting the foregoing, Seller's may use such funds to pay claims as necessary to deliver certificates of title to Purchaser in accordance with Section 3.2(g) of the Purchase Agreement and to pay secured or super-priority chapter 11 administrative claims in the Chapter 7 Cases.

        c.   Consistent with Section 1.1(g) of the Purchase Agreement, any Avoidance Action against Purchaser, Brooks Pickering, or ESBE Strategic Partners, Inc., are sold, assigned, and transferred to Purchaser at Closing and Sellers will cause Purchaser, Brooks Pickering, or ESBE Strategic Partners, Inc. to be dismissed from Adversary Proceeding Nos: 2:21-ap-00068-DPC and 2:21-ap-00069-DPC, as applicable.

    10.   **Commercially Reasonable Efforts.** Purchaser and Sellers will use commercially reasonable efforts to obtain Bankruptcy Court approval of this Seventh Amendment and agree time is of the essence. If the Bankruptcy Court does not approve this Seventh Amendment, the Seventh Amendment will be deemed null and void and of no effect.

Sellers:

Even Stevens Sandwiches, LLC,
Chapter 7 Debtor

By: _____

Name: _Dina L. Anderson_

Its: _Chapter 7 Trustee_

Even Stevens Utah, LLC,
Chapter 7 Debtor

156144217.2

By: _____

Name: Dina L. Anderson

Its: Chapter 7 Trustee

Even Stevens Idaho, LLC,
Chapter 7 Debtor

By: _____

Name: Dina L. Anderson

Its: Chapter 7 Trustee

**Purchaser:**

Even Stevens Acquisition Partners, LLC,
a Utah limited liability company

By: _____

Name: Brooks E. Pickering

Its: Manager

156144217.2

# SECURED PROMISSORY NOTE

$1,950,000.00                                                                                        April 4, 2022

FOR VALUE RECEIVED, the undersigned, Even Stevens Acquisition Partners, LLC, a Utah limited liability company ("**Maker**"), promises to pay to Dina L. Anderson, in her as the chapter 7 trustee for Even Stevens Sandwiches, LLC, Even Stevens Utah, LLC, and Even Stevens Idaho, LLC ("**Holder**"), the principal sum of ONE MILLION NINE HUNDRED FIFTY THOUSAND DOLLARS ($1,950,000.00), together with the accrued interest, at the times and in the manner set forth in this Secured Promissory Note ("**Note**").

WHEREAS, Maker is delivering this Note to Holder in connection with Maker's purchase of assets from Holder under the *Asset Purchase Agreement* dated June 1, 2021 (as amended, "**Purchase Agreement**") by and among Even Stevens Sandwiches, LLC, Even Stevens Utah, LLC, and Even Stevens Idaho, LLC (collectively, "**Sellers**") by and through Dina L. Anderson as chapter 7 trustee for the Sellers under jointly administered Case No. 19-bk-03236-DPC;

WHEREAS, capitalized terms used but not defined in this Note retain the definition given to them in the Purchase Agreement;

NOW, THEREFORE, Maker hereby agrees as follows:

1.      Interest.  Form the date of this Note until the Maturity Date, the principal sum outstanding under this Note bears interest at 12.0% per annum. Interest is computed on the basis of a 360-day year composed of 12 months of 30 days each, such that 30 days' interest accrues each calendar month. Interest payments are due by wire transfer and payable monthly in arrears on or before the first business day of the month immediately following the date of this Note and continuing thereafter until the Maturity Date.

2.      Maturity Date.  All unpaid principal and accrued interest under this Note is due and payable April 1, 2023.

3.      Lawful Money.  All obligations under this Note must be paid in lawful money of the United States of America.

4.      Application of Payments.  Any payment received by or on behalf of Holder under this Note shall be applied first to interest accrued under this Note and then to principal.

5.      Prepayment.  Any obligation under this Note may be prepaid in full or in part, at any time, without penalty.

6.      Default Rate.  If any payment required under this Note is not paid when due, or if Maker files a voluntary petition or becomes the alleged debtor of an involuntary petition under Title 11 of the United States Code, or if Maker makes an assignment for the benefit of creditors, or becomes the subject of any proceeding for receivership or insolvency, or if Maker admits in writing its inability to pay debts as they come due, or if levy or execution is issued against any of Maker's property or assets (each, a "**Default**"), then, in addition to all remedies available to Holder

156150295.2

in law or equity, the outstanding principal and all accrued interest shall accrue interest at the rate of 20% per annum until such Default is cured in full.

7. <u>Security</u>. This section is intended to constitute a "security agreement" for purposes of the Uniform Commercial Code.

(a) <u>Grant of Security Interest & Cross-Collateralization</u>. To secure the prompt payment, performance and fulfillment of any and all obligations of Maker to Holder under this Note, Maker assigns, transfers, conveys, pledges, mortgages and grants to Holder a security interest and lien in any and all personal property, including all accounts, accounts receivable, chattel paper, contract rights, documents, equipment, fixtures, general intangibles, goods, instruments, inventory, securities, deposit accounts, rights in pensions or retirement plans, investment property, and all other personal property of whatever nature and kind, wherever located, in which Maker now or hereafter has any right or interest, and in any and all attachments, accessories, tooling, substitutions, replacements, replacement parts, additions, software and software upgrades and all cash and non-cash proceeds (including rental proceeds, insurance proceeds, sale proceeds, accounts and chattel paper arising out of or related to the sale, use, rental or other disposition thereof) of and to all of the foregoing (collectively called "**Collateral**"). Maker grants Holder a security interest in the Collateral to secure all obligations arising under this Note.

(b) <u>Financing Statement Filings</u>. Maker authorizes Holder to file, without the signature of Maker where permitted by law, one or more financing or continuation statements, and amendments thereto, relating to the Collateral. Such statements may: (i) describe the Collateral, and (ii) contain any other information required by the Uniform Commercial Code of each jurisdiction in which Holder elects to file a financing statement for the sufficiency or filing office acceptance of any financing statement or amendment. Maker agrees that a photographic, electronic or other reproduction of this Note or any financing statement describing any Collateral is sufficient as a financing statement and may be filed in any jurisdiction Holder may deem appropriate.

8. <u>Remedies; Acceleration</u>. Upon the occurrence of a Default and at the option of Holder, the entire balance of principal, together with all accrued interest thereon and all other amounts payable by Maker, shall, without demand or notice, immediately become due and payable and Holder may invoke any remedies permitted by applicable law. No delay or omission on the part of Holder in exercising any right under this Note shall operate as a waiver of such right. The remedies of Holder shall be cumulative and concurrent, and may be pursued singularly, successively or together, at the sole discretion of Holder, and may be exercised as often as occasion therefor shall arise. Maker (a) agrees to pay Holder, on demand, any cost, expense, or fee (including reasonable attorney fees and court costs) Holder incurs from and after the Maturity Date or from and after the occurrence of a Default in enforcing payment of any amount due under this Note (if suit is brought to enforce payment of any amount due under this Note, any such cost, expense, or fee is to be determined by a court sitting without a jury); (b) waives any counterclaim or setoff and any applicable exemption, evaluation, or appraisal right; (c) agrees that Holder's acceptance of any performance under this Note not strictly in compliance with the terms of this Note does not waive any of Holder's rights; (d) waives any right to demand a trial by jury in any action brought on this Note.

- 2 -

156150295.2

9. _Waiver_. Except for notices contemplated in this Note, Maker hereby waives demand, diligence, presentment for payment, protest and demand, notice of extension, dishonor, protest, and demand for non-payment of this Note.

10. _Choice of Law_. This Note shall be governed by and construed in accordance with the laws of the State of Arizona applicable to contracts made within such State and without giving effect to the choice of law principles of such State.

11. _Notices_. All notices required or contemplated to be given hereunder to Maker shall be addressed to Maker at: 746 E. Winchester Street, Suite G20, Murray, UT 84107, or such other address that Maker may provide Holder.

12. _Assignment_. This Note shall be binding upon and inure to the benefit of the parties hereto, their respective successors in interest, and assigns. If this Note is transferred or conveyed

- 3 -

156150295.2

by Holder to any other person, the holder of the Note shall become the Holder as referred to herein. This Note may not be transferred by Maker.

      13.    <u>Counterparts</u>. This Note may be executed in any number of counterparts, either manually or electronically, each of which when so executed and delivered shall be deemed an original, and all of which together shall constitute one and the same agreement.

MAKER

Even Stevens Acquisition Partners, LLC

By: _____
Name: Brooks Pickering
Its: Manager

**PERSONAL GUARANTY**

Brooks Pickering, individually, (the "**Guarantor**"), shall act as Guarantor for Maker for purposes of this Note. Guarantor unconditionally and irrevocably guaranty the performance by Maker of each and every obligation of Maker under this Note. Guarantor consents that Holder shall not be required to initiate an action, or exhaust Holder's legal remedies against Maker, to enforce this guaranty. Guarantor consents that this guaranty may be immediately enforced upon Maker's failure to perform any obligation under this Note. This guaranty shall not be released, extinguished, modified, or in any way affected by failure on the part of Holder to enforce all of the rights and remedies available to Holder under this Note. Guarantor further waives all claims against Maker, including subrogation rights. This guaranty shall bind the Guarantor and Guarantor's respective heirs, personal representatives, trustees, and assigns. This guaranty shall inure to the benefit of Holder and Holder's respective successors, heirs, personal representatives, trustees, and assigns. The bankruptcy of Maker shall not relieve Guarantor of any of Guarantor's obligations under this guaranty.

By: _____
Name: Brooks Pickering

- 4 -

156150295.2